**Mary Janice (Glenn) SOUTHERN, Appellant,**

v.

**James Jerry GLENN, Appellee.**

**No. 04-83-00172-CV.**

Court of Appeals of Texas, San Antonio.

June 20, 1984.

Rehearing Denied Aug. 28, 1984.

John W. Benbow, Benbow & Gross, Inc., San Antonio, for appellant.

John W. Bell, Mayo J. Galindo, San Antonio, for appellee.

Before BUTTS, REEVES and TIJERINA, JJ.

## OPINION

BUTTS, Justice.

The question is whether the Texas state court acquired jurisdiction of the defendant, a retired member of the military service, in light of the Uniformed Services Former Spouses' Protection Act, 10 U.S.C. § 1408 (1983).[1]

Plaintiff Mary Janice (Glenn) Southern appeals from the trial court's order dismissing for want of jurisdiction her suit for partition of military retirement benefits. § 1408(c)(4). Defendant James Jerry Glenn entered his special appearance to contest jurisdiction of the Texas court pursuant to TEX.R.CIV.P. 120a. Trial was before the court, which filed findings of fact and conclusions of law. We affirm.

A chronology of pertinent events follows:

1960—James enters military service in Mississippi

November 2, 1962—Mary and James are married in San Antonio, Texas

May 17, 1982—Mary and James are divorced in San Antonio, Texas

May 18, 1982—James takes terminal leave from the military and returns to Mississippi

May 31, 1982—James retires from the military

November 10, 1982—Mary files a partition suit for military retirement benefits in San Antonio, Texas

Mary, in her partition suit, asks for one-half of prior and future payments of defendant's military retirement benefits, based upon their period of marriage between November 2, 1962 and May 17, 1982. It is well settled Texas law that a divorce suit and a subsequent partition suit are two

different causes of action. *Balazik v. Balazik*, 632 S.W.2d 939, 941 (Tex.App.—Fort Worth 1982, no writ); *Matthews v. Houtchens*, 576 S.W.2d 880, 883 (Tex.Civ.App.—Fort Worth 1979, no writ). When a divorce decree fails to provide for the division of all of the community property, as here, the husband and wife become tenants in common or joint owners of that property which was not divided. *Busby v. Busby*, 457 S.W.2d 551, 554 (Tex.1970).

The divorce decree did not provide for the partition of military retirement benefits, being rendered in the hiatus between the decision of *McCarty v. McCarty*, 453 U.S. 210, 101 S.Ct. 2728, 69 L.Ed.2d 589 (1981) (decided June 26, 1981), and the enactment of the FSPA in 1982.

Until displaced by the FSPA, *McCarty* mandated that military retirement benefits were the separate property of the retiree and not subject to community property division upon divorce between the retiree and his spouse. 453 U.S. at 233, 101 S.Ct. at 2741, 69 L.Ed.2d 589 at 606. Interpreting *McCarty*, the Texas Supreme Court has held the Supremacy Clause, U.S. CONST. art. VI, cl. 2, precluded the apportionment of nondisability military retirement benefits upon divorce. *Trahan v. Trahan*, 626 S.W.2d 485, 487 (Tex.1981). *See also Voronin v. Voronin*, 662 S.W.2d 102, 104 (Tex. App.—Austin 1983, writ dism'd); *Gordon v. Gordon*, 659 S.W.2d 475, 477 (Tex.App.—Corpus Christi 1983, no writ). Nor could the trial court even consider such military retirement pay in its apportionment of the community estate. *See Cameron v. Cameron*, 641 S.W.2d 210 (Tex.1982).

That section of the FSPA which overrides the *McCarty* decision provides:

Subject to the limitations of this section, *a court may treat disposable retired or retainer pay* payable to a member for pay periods beginning after June 25, 1981, either as property solely of the member or as property of the member

1. Statutory references are to the Uniformed Services Former Spouses' Protection Act, 10 U.S.C. § 1408 (1983) called FSPA, unless otherwise noted. This statute was enacted on September 8, 1982 and became effective February 1, 1983.

and his spouse in accordance with the law of the jurisdiction of such court. [Emphasis added.]

§ 1408(c)(1). This section purports to reinstate Texas law on military retirement benefits as it existed prior to the *McCarty* decision. The FSPA is retroactive to June 25, 1981, the day before the *McCarty* decision, so that military retirement benefits are made subject to division both before and after June 25, 1981. *Voronin, supra* at 106; *Gordon, supra,* at 478; Congressional Conference Report, U.S.Code Cong. & Ad.News 1570 (1982).

■ Prior to *McCarty,* the Texas law designated military benefits earned during marriage as property subject to division upon divorce. *Taggart v. Taggart,* 552 S.W.2d 422 (Tex.1977); *Cearley v. Cearley,* 544 S.W.2d 661 (Tex.1976); *Busby v. Busby, supra. Cearley, supra,* at 664, also states the formula for division of military retirement benefits between spouses:

$$\frac{\text{Months married}}{\text{Months in service}} \times \text{final benefit} \times \frac{1}{2}$$

This formula allows for the division of future military retirement benefits. *Id.* at 663. Thus, even though James retired subsequent to his divorce, his unmatured retirement benefits would still be subject to apportionment as part of the community property estate. *Id.* at 664. Under the Texas formula, Mary would be entitled to a little less than one-half of his military retirement benefits since the parties were married for about eighteen of the twenty years that James was in the service.

■ The trial court filed the following findings of fact:

1. Plaintiff is a resident of San Antonio, Bexar County, Texas.

2. The Defendant, JAMES JERRY GLENN, was a domiciliary and resident of Taylorsville, Mississippi when he entered the United States Army on July 15, 1960.

3. Plaintiff and Defendant were married on November 2, 1962 and were husband and wife until Plaintiff divorced Defendant May 17, 1982 by decree of the 45th Judicial District Court of Bexar County, Texas in cause no. 81–CI–10565, in cause styled "In the matter of the marriage of Mary Janice Glenn and James Jerry Glenn."

4. At the time Plaintiff instituted divorce proceedings in Bexar County the Defendant was a resident of Bexar County pursuant to his military assignment at Fort Sam Houston, Texas. At this time, he was, however, a domiciliary and citizen of the State of Mississippi.

5. At all times that Defendant served in the Armed Forces of the United States of America he was a citizen and domiciliary of the State of Mississippi although a resident of other states without the State of Mississippi pursuant to military orders.

6. Even before the divorce decree was rendered in cause No. 81–CI–10565 the Defendant, on April 18, 1982, left the State of Texas and reestablished his residence in Taylorsville, Mississippi.

7. Since that time the Defendant has continuously resided and been a domiciliary of the State of Mississippi.

8. On 11–10–82, at the time Plaintiff instituted the instant cause the Defendant, JAMES JERRY GLENN, was a resident and domiciliary of Taylorsville, Mississippi.

9. The Defendant has not voluntarily appeared nor consented to the assumption of jurisdiction by this Court over his person in this cause.

10. After the parties were divorced by decree of the Bexar County, District Court on May 17, 1982, no motion for new trial was filed by either party.

Such findings of fact have the same force and effect as jury answers to special issues and are treated with the same dignity on appellate review. 4 R. McDONALD, TEXAS CIVIL PRACTICE § 16.05 (rev.1971). Unchallenged findings are binding on ap-

peal. *Whitten v. Alling & Cory Co.*, 526 S.W.2d 245, 248 (Tex.Civ.App.—Tyler 1975, writ ref'd).

■ The trial court also filed the following conclusions of law:

1. The instant suit is a separate and independent cause of action from the previous divorce cause which resulted in a final judgment.
2. The Uniformed Services Former Spouses' Protection Act 10 U.S.C. 1408 preempts the subject matter of this suit and limits the power of this Court to grant Plaintiff the relief sought by her in the premises.
3. 10 U.S.C. 1408(c)(4) limits this Court's power (jurisdiction) to dispose of military retirement or retainer pay unless it is the Court of Defendant's residence other than because of military assignment, the Court of his domicile, or a Court with jurisdiction based on the member's consent.
4. At the time Plaintiff instituted the instant suit on November 10, 1982, the Defendant was neither a resident nor a domiciliary of Bexar County, Texas, and has never consented to the assumption of jurisdiction by this Court over his person or the subject matter.

The principal usefulness of conclusions of law is to denote to the appellate court the theory on which the action was tried. If the controlling findings of fact will support a correct legal theory, incorrect legal conclusions will not require a reversal. *City of Corpus Christi v. Davis*, 575 S.W.2d 46, 55 (Tex.Civ.App.—Corpus Christi 1978, no writ); 4 R. McDONALD, *supra*, at § 16.05.

In points of error one and two, plaintiff challenges conclusions of law two and three that the trial court had no personal jurisdiction over James in that the FSPA is not applicable to partition suits. In point of error three, plaintiff challenges findings of fact four through seven that James is a resident and domiciliary of Mississippi. Therefore the remaining unchallenged findings, including finding of fact nine that James did not consent to the court's jurisdiction, are binding on appeal. *Whitten, supra*, at 248.

Section 1408(a)(2) provides:

"Court order" means a final decree of divorce, dissolution, annulment, or legal separation issued by a court, or a court ordered, ratified, or approved property settlement incident to such a decree (*including a final decree modifying the terms of a previously issued decree of divorce, dissolution, annulment, or legal separation*, or a court ordered, ratified, or approved property settlement incident so such previously issued decree), which—

(A) is issued in accordance with the laws of the jurisdiction of that court;
(B) provides for—
(i) payment of child support (as defined in section 462(b) of the Social Security Act (42 U.S.C. 662(b));
(ii) payment of alimony (as defined in section 462(c) of the Social Security Act (42 U.S.C. 662(c)); or
(iii) *division of property (including a division of community property)*; and
(C) specifically provides for the payment of an amount, expressed in dollars or as a percentage of disposable retired or retainer pay, from the disposable retired or retainer pay of a member to the spouse or former spouse of that member. [Emphasis ours.]

Once a court order partitions this property and the order is properly served upon the Secretary of Defense, he may disburse the military retirement benefits (§ 1408(d)(1)) provided: (1) the parties have been married for a period of at least ten years during which one spouse performed military service (§ 1408(d)(2)); and (2) the court order does not exceed fifty percent (50%) of these benefits (§ 1408(e)(1)).

■ The case at bar raises the sole question whether the trial court had personal jurisdiction over James, not whether it could divide the military retirement bene-

fits between James and Mary. This personal jurisdiction question seems to be one of first impression in Texas. In order to issue a court order partitioning retirement benefits, a court must first have personal jurisdiction. Section 1408(c)(4) sets out the personal jurisdictional requirements:

> A court may not treat the disposable retired or retainer pay of a member in the manner described in paragraph (1) unless the court has jurisdiction over the member by reason of (A) his residence, other than because of military assignment, in the territorial jurisdiction of the court, (B) his domicile in the territorial jurisdiction of the court, or (C) his consent to the jurisdiction of the court. [Emphasis added.]

"Treat" has been defined as "to deal with a matter or subject...." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2434 (1981). It is uncontested that defendant was served with process in accordance with TEX.R.CIV.P. 108. There is no question of lack of notice of the cause of action.

## FSPA JURISDICTION

■■ We observe that the FSPA jurisdiction statute is more restrictive than the minimum contacts test which will subject an out-of-state defendant to the jurisdiction of the forum state provided (1) the nonresident defendant must purposely do some act or consummate some transaction in the forum state, (2) the cause of action between plaintiff and defendant must arise out of that transaction, and (3) the assumption of jurisdiction by the forum state must not offend traditional notions of fair play and substantial justice under the due process clause of the Fourteenth Amendment, bearing in mind the quality, nature, and extent of the activity in the forum state, the relative convenience of the parties, the benefits and protection of the laws of the forum state afforded by the respective parties, and the basic equities of the situation. See generally Helicopteros Nacionales de Colombia, S.A. v. Hall, —— U.S. ——, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984); Kulko v. California Superior Court, 436 U.S. 84, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1978); U-Anchor Advertising, Inc. v. Burt, 553 S.W.2d 760, 762 (Tex.1977).

■ A relationship between the defendant, the forum and the litigation is the essential foundation of in personam jurisdiction. Shaffer v. Heitner, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977). This state's long arm statute, TEX.REV.CIV. STAT.ANN. art. 2031b (Vernon 1964 and Vernon Supp.1984), or its alternative, TEX. R.CIV.P. 108, reaches as far as the due process clause of the Fourteenth Amendment permits in obtaining personal jurisdiction. U-Anchor Advertising, Inc., supra, at 764 (2031b meets minimum contacts standards); Butler v. Butler, 577 S.W.2d 501, 507 (Tex.Civ.App.—Texarkana 1978, writ dism'd) (service under Rule 108 meets minimum contacts standards). See Comment, Long Arm Jurisdiction: Rule 108 As An Alternative to "Doing Business" under Article 2031b, 30 BAYLOR L.REV. 99 (1978).

■ We hold that a partition suit, such as this one, is a suit wherein the court "treats the disposable retired pay" of the military member. The fact that the defendant may meet the minimum contacts test under Rule 108, which ordinarily would satisfy the due process requirements, will not prevail to establish jurisdiction. We conclude that is not the proper test to apply in this case. This is the result when Congress legislates on a subject which is within its constitutional control and over which it has jurisdiction, as in this case. The state law must yield when there is a conflict with a valid federal law. Free v. Bland, 369 U.S. 663, 82 S.Ct. 1089, 8 L.Ed.2d 180 (1962). McCarty held that military retirement benefits were not divisible as community property in a state court. Under the Supremacy doctrine, the Texas courts, following the McCarty decision, were required to accept the ruling and to apply the holding. Subsequently Congress enacted the FSPA. But Congress imposed certain limitations in the Act, one of them

being that courts can deal only with disposable retired or retainer pay.

Before placing within the Act the limitations on jurisdiction, with which this Court is concerned, Congress heard arguments of witnesses from the Department of Defense. They argued stringently for retention of the separate property concept for retired military pay. They further contended there was a need to prevent the possibility of "forum shopping" by the spouses. *See* Newton & Trail, Uniformed Services Former Spouses Act—A Legislative Answer to the *McCarty* Problem, 46 TEX.BAR J. 291, 293 (1983), *citing* S.Rep. No. 502, 97th Cong.2d Sess. 6, reprinted in 1982 U.S.Code Cong. & Ad.News 1596.

Section 1408(c)(4) clearly limits the jurisdiction of state courts, including Texas courts, to dispose of military retirement pay. The state court must first determine it has jurisdiction of the military member to treat the retired pay. The court will determine jurisdiction (1) by finding the member's residence, other than because of military assignment, is within the state, or (2) by finding the member's domicile is within the state. There is only one exception: the member *consents* to the jurisdiction of the court.

■ Thus we are compelled to apply the particular jurisdictional provisions of that statute rather than the more expansive minimum contacts standards. In *Sarles v. Sarles*, 143 Cal.App.3d 24, 191 Cal.Rptr. 514 (1983), the appellate court found that California had jurisdiction to partition the husband's military retirement benefits. However, *Sarles* can be distinguished from this case in that Sarles appeared generally, submitting himself to the jurisdiction of the court, whereas this defendant objected to Texas' jurisdiction by his special appearance. We hold, accordingly, the partition suit before us mandates the application of the FSPA. Points of error one and two are overruled.

■ Under the FSPA, the trial court in this case could assume jurisdiction over James only if the proof showed that Texas

is either his residence or domicile. Black's Dictionary defines residence as "personal presence at some place of abode...." BLACK'S LAW DICTIONARY 1176 (rev. 5th ed. 1979). It is undisputed that at the time of the partition suit, James' residence was in Taylorsville, Mississippi. At issue is his domicile, a far more elusive concept. A person's domicile is that place where he has his true, fixed and permanent home and principal establishment, and to which he has the intention of returning whenever he is absent therefrom. C.H. WRIGHT, LAW OF FEDERAL COURTS § 26 (1976) and cites therein.

■ Two elements are necessary to change domicile: (1) the party must take up residence at the new domicile, and (2) the party must intend to remain there for the time at least. *Id.* The court as fact finder should look to his stated intentions, exercise of the franchise, payment of personal taxes, house of residence and place of business. *Id.*

At the special appearance hearing, James testified he was born and raised in Taylorsville, Mississippi. Further he stated, although the military moved him around quite a bit, he always intended to return there. His mother and some family members live in Taylorsville and he has paid taxes in Mississippi on land he owned. He also transferred the deposit of his retirement checks from Texas to Mississippi subsequent to his divorce.

On the other hand, for most of their married life, James and Mary resided in Texas. James voted in the 1976 presidential election in Texas and held a Texas driver's license. His daughter testified that he had told her that he intended to retire in San Antonio and that is why he added a pool at his home there.

■ In the absence of an affirmative showing that a person in military service has taken action to change his domicile at the time of entering the service, there is a presumption that the domicile remains where it was when the person entered military service. *See Hagle v. Leeder*, 442

S.W.2d 908, 909 (Tex.Civ.App.—Austin 1969, no writ). This presumption is rebuttable.

The trial court filed findings of fact that Mississippi is defendant's domicile. When specific findings are filed by the trial court and a statement of facts is before the appellate court, as here, the findings will be sustained if there is any evidence to support them. We find the record discloses sufficient evidence to justify the findings of fact that defendant is domiciled in Mississippi; we therefore sustain those findings. *Ford v. Allen*, 526 S.W.2d 643, 644 (Tex.Civ.App.—Austin 1975, no writ); 4 R. McDONALD, *supra*, at § 16.10(b).

Since the findings of fact are supported by the evidence, we conclude the trial court correctly ruled it lacked jurisdiction of the defendant because he is neither a resident nor domiciliary of Texas. We accordingly overrule point of error three and affirm the judgment.[2]

---

**2.** We note that *plaintiff still may file suit in* Mississippi to obtain partition of military retire-     ment benefits.