560 So.2d 722 (1990)
Joyce PETTERS
v.
William L. PETTERS.
No. 07-CA-59311.
Supreme Court of Mississippi.
April 11, 1990.
Richard Grindstaff, Columbus, for appellant.
No Brief Filed for appellee.
Before HAWKINS, P.J., and ROBERTSON and ANDERSON, JJ.
ROBERTSON, Justice, for the Court:

I.
This appeal presents for consideration federal statutory limitations upon this state's jurisdictional authority to adjudge a wife's claim of rights in her non-resident husband's military retirement benefits. In this limited context, we find that by special federal enactment the length of this state's long-arm has been considerably abbreviated.
We affirm the Chancery Court's dismissal for lack of personal jurisdiction on the claim for a share of the non-resident serviceman's *723 pension, but reverse and remand on another claim.

II.
William F. Petters presently resides in Waxahatchie, Texas, and has not been in Mississippi since April of 1974. Prior to that time, it appears that William was a domiciliary of the state of Mississippi. William is a native of Corinth, Mississippi, and graduated from high school in Corinth. Upon graduation he enlisted in the United States Air Force. In April of 1951, William married Joyce Petters in Corinth, Mississippi, and they lived together as husband and wife until April of 1974.
For twenty-two years, William was a professional soldier. He moved his wife and family to Columbus, Mississippi, in 1961, incident to assignment to Columbus Air Force Base, and remained there through 1969. In 1969, the Air Force transferred William to Thailand for eighteen months, then to Barksdale Air Force Base, Louisiana. William's family, his wife Joyce and four children, remained in Columbus, Mississippi, and, while at Barksdale AFB, he would commute back to Mississippi on the weekends. William retired from the Air Force in August of 1972 and returned to Columbus at that time. As indicated above, he left Mississippi in April of 1974 and has not been back.
On April 8, 1987, Joyce Petters filed her complaint in the Chancery Court of Lowndes County, seeking a divorce on grounds of desertion, Miss. Code Ann. § 93-5-1 [Fourth] (1972). She sought judgment for "the sum of $5,000.00 for repayment of monies that she was forced to pay when the defendant deserted her." In addition, Joyce prayed for an award of "one-half (1/2) of pension which the defendant receives from the United States Air Force."
Joyce caused process to be served on William in the state of Texas by publication. See Rule 4(c)(4), Miss.R.Civ.P. William made no appearance. On June 16, 1987, the Chancery Court entered its final judgment granting Joyce a divorce on grounds of desertion and declaring the bonds of matrimony theretofore existing between the parties dissolved. The Court made no award of financial or monetary relief, see Noble v. Noble, 502 So.2d 317 (Miss. 1987), but retained jurisdiction for that purpose should Joyce thereafter secure personal service of process on William.
On October 21, 1987, Joyce filed in the Chancery Court a motion for issuance of new process and for a judgment for the $5,000.00 debt alleged to be owing to her and for one-half (1/2) of William's military retirement pension. This time process was personally served upon William in Waxahatchie, Texas, on October 28, 1987. See Rule 4(c)(1), Miss.R.Civ.P. Again, William made no appearance of any kind.
Notwithstanding, the Chancery Court on May 6, 1988, dismissed the complaint for failure of personal jurisdiction over William. The Court predicated its decision on the restrictive provisions of the Federal Uniformed Services Former Spouses' Protection Act, 10 U.S.C. § 1408(c)(4). The Court in no way addressed the question whether Joyce had any right in William's retirement pension such that she could enforce it in a court of this state if personal jurisdiction should ever be obtained over William.
Joyce now appeals to this Court.

III.
First, a few basics. Jurisdiction precedes adjudication. Before a court may say anything worth listening to regarding the (de)merits of a party's claim, that court must have authority to speak. That court has such authority only when the claim is one within the court's subject matter jurisdiction and after the court has acquired personal jurisdiction of the parties. If the court is without jurisdiction  subject matter or personal  no one is bound by anything the court may say regarding the (de)merits of the case. We have recently noted the point in McDaniel, Adm'r v. Ritter, 556 So.2d 303, 307, n. 4 (Miss. 1989). Put in Civil Rules parlance, defenses under Rule 12(b)(1) and (b)(2) precede those under Rule 12(b)(6). See, e.g., Combs v. Bakker, 886 F.2d 673, 675-76 (4th Cir.1989).
*724 It is easy to see that Rule 12(b)(2) (personal jurisdiction) and Rule 12(b)(6) (failure to state a claim) inquiries are separate and distinct. Educational Placement Services v. Wilson, 487 So.2d 1316, 1320 (Miss. 1986); Administrators of the Tulane Educational Fund v. Cooley, 462 So.2d 696, 701 (Miss. 1984); see also Val Leasing, Inc. v. Hutson, 674 F. Supp. 53, 55 (D.Mass. 1987). A non-resident's amenability to suit here in no way turns on the viability of the claim the plaintiff asserts. Conversely, that the plaintiff's claim is without merit is never sufficient to establish lack of personal jurisdiction. The non-resident does not prevail on his Rule 12(b)(2) motion by convincing the court that the plaintiff's suit is groundless.
These realities led the late Judge Henry J. Friendly to recognize that
[n]ot only does logic compel initial consideration of the issue of jurisdiction over the defendant  a court without such jurisdiction lacks power to dismiss a complaint for failure to state a claim  but the functional difference that flows from the ground selected for dismissal likewise compels considering jurisdiction and venue questions first. A dismissal for lack of jurisdiction or improper venue does not preclude a subsequent action in an appropriate forum, whereas a dismissal for failure to state a claim upon which relief can be granted is with prejudice.
Arrowsmith v. United Press Int'l, 320 F.2d 219, 221 (2d Cir.1963); see also Season-All Industries, Inc. v. Turkiye Sise Ve Cam Fabrikalari, 425 F.2d 34, 38 (3d Cir.1970); Scullin Steel Co. v. National Railway Utilization Corp., 520 F. Supp. 383, 388 (E.D.Mo. 1981); Bruce v. Fairchild Industries, Inc., 413 F. Supp. 914, 916 (W.D.Okla. 1974); Attorney General v. Industrial Nat. Bank of Rhode Island, 380 Mass. 533, 404 N.E.2d 1215, 1217 (1980); 5 C. Wright & A. Miller, Federal Practice and Procedure § 1351, at 563 (1969).
Understanding why Rule 12(b)(2) inquiries are not only separate from but also precede consideration of Rule 12(b)(6) inquiries has an historical ground. In a former time, a non-resident defendant did not dare demur first for fear of forfeiting his in personam jurisdiction defense. Today, answers commonly assert 12(b)(2) and 12(b)(6) and many other defenses, without suggestion that the former is waived by the others.
It may well be that Joyce is not entitled to relief on her demand for "one-half (1/2) of the Defendant's pension from the United States Air Force," but we may not tell Joyce this bad news with any authoritative effect until we first get William in court and give Joyce a chance to convince us otherwise.[1]
What we are saying, in other words, is that, even if Joyce were entitled to recover an interest in William's military retirement pension, the Court would have no authority to award it to her until it acquires personal jurisdiction over William. The point is analogous to the way we view the factual allegations of a complaint when a defendant mounts a jurisdictional attack. In *725 those cases we take as true the well pleaded allegations of the complaint. Common Cause of Mississippi v. Smith, 548 So.2d 412, 415 (Miss. 1989); Riley v. Moreland, 537 So.2d 1348, 1351 (Miss. 1989); Marx v. Truck Renting & Leasing Assoc., Inc., 520 So.2d 1333, 1339 (Miss. 1987); American Fidelity Fire Insurance Co. v. Athens Stove Works, Inc., 481 So.2d 292, 296 (Miss. 1985). By the same token in our present procedural posture, we take as viable the substantive legal premises of the complaint.

IV.
These things said, we turn to the case at bar. The Chancery Court dismissed Joyce's complaint because it thought William Petters, sixteen-years a Texan, could not be subject to suit regarding his retirement pension in Mississippi, and our question is whether the Chancery Court was correct in that regard. The court has no authority to adjudge the (de)merits of Joyce's claim (even by saying that, under Mississippi law, she has no rights in her former husband's military retirement pension) until it has both Joyce and William "in court."[2]
Personal jurisdiction jurisprudence, constitutional statutory amenability, as well as implementing procedure, is no different in domestic relations litigation than in other cases. Ordinarily this state has authority to adjudge the important rights of a non-resident so long as the defendant has constitutionally adequate minimum contacts with this state, see Rothschild v. Hermann, 542 So.2d 264, 265 (Miss. 1989); Carpenter v. Allen, 540 So.2d 1334, 1335-37 (Miss. 1989); Penton v. Penton, 539 So.2d 1036, 1038 (Miss. 1989); Noble v. Noble, 502 So.2d 317, 319-20 (Miss. 1987); see generally Kulko v. California Superior Court, 436 U.S. 84, 91, 98 S.Ct. 1690, 1696, 56 L.Ed.2d 132, 140 (1978), and other legal requisites are satisfied. McDaniel, Adm'r v. Ritter, 556 So.2d 303, 307 n. 4 (Miss. 1989).
In September of 1982, the Congress enacted FUSFSPA and resolved a controversy theretofore existing regarding state authority to adjudge the rights of (ex)spouses in a retired serviceman's military retirement pension. At issue today is a provision respecting personal jurisdiction and affording the ex-serviceman protections in that regard.
A court may not treat the disposable retired or retainer pay of a member in the manner described in paragraph (1) [e.g., adjudging that his (former) wife has a property interest in it] unless the court has jurisdiction over the member by reason of (A) his residence, other than because of military assignment, in the territorial jurisdiction of the court, (B) his domicile in the territorial jurisdiction of the court, or (C) his consent to the jurisdiction of the court.
10 U.S.C. § 1408(c)(4). By virtue of the Supremacy Clause, this federal enactment overrides this state's long-arm statutes to the extent that this state's law would exceed the limitations of the federal enactment. See generally, Mississippi Power & Light Co. v. Mississippi ex rel. Moore, 487 U.S. 354, 108 S.Ct. 2428, 2439, 101 L.Ed.2d 322, 338 (1988); Free v. Bland, 369 U.S. 663, 669-70, 82 S.Ct. 1089, 8 L.Ed.2d 180, 185 (1962); Mortenson v. Mortenson, 409 N.W.2d 20, 22-23 (Minn.App. 1987); Seeley v. Seeley, 690 S.W.2d 626, 627 (Tex. App. 1985).
*726 The political history of FUSFSPA makes clear a purpose to limit forum shopping and protect former servicemen from being required to defend their retirement pensions in foreign forums with which they have little contact. See, e.g., Sen.Rep. No. 97-502 at 47-48, 55, 57 reprinted in U.S. Code Cong. & Admin.News, No. 3 at 1555, 1630-1631, 1638, 1640; H.Conf.Rep. No. 97-749, reprinted in 1982 U.S.Code Cong. & Admin.News, No. 3 at 1570-1571.
Other states have considered the question and held uniformly, in this limited context, that a state's process arm is not nearly so long as otherwise. In re Marriage of Hattis, 242 Cal. Rptr. 410, 196 Cal. App.3d 1162 (1987); Southern v. Glenn, 677 S.W.2d 576 (Tex. App. 4 Dist. 1984), error refused, n.r.e.; Dunn v. Dunn, 708 S.W.2d 20 (Tex. App. 5 Dist. 1986); White v. White, 543 So.2d 126 (La. 1989); In re Marriage of Parks, 737 P.2d 1316, 48 Wash. App. 166 (1987); Mortenson v. Mortenson, 409 N.W.2d 20 (Minn. 1987).
Today's case is our first occasion to construe the personal jurisdiction limitations of Section 1408(c)(4). The language of the statute makes it clear that only current domicile or residence may suffice to confer authority upon the court to adjudge rights in a former serviceman's military retirement pension. Where, as here, the serviceman moved to another state long before commencement of the action at issue, the courts have unanimously held that Section 1408(c)(4) precluded personal jurisdiction. Tarvin v. Tarvin, 187 Cal. App.3d 56, 61, 232 Cal. Rptr. 13, 16 (1986); Ober v. Bounds, 528 So.2d 247, 249-50 (La. App. 1988); Mortenson v. Mortenson, 409 N.W.2d 20, 23 (Minn.App. 1987); Messner v. Eighth Judicial District Court, 766 P.2d 1320, 1321 (Nev. 1988); Sparks v. Caldwell, 104 N.M. 475, 723 P.2d 244 (1986); Eichor v. Eichor, 290 S.C. 484, 351 S.E.2d 353, 355 (1986); Barrett v. Barrett, 715 S.W.2d 110 (Tex. App. 1986); Dunn v. Dunn, 708 S.W.2d 20, 22 (Tex. App. 1986); Kovacich v. Kovacich, 705 S.W.2d 281, 283 (Tex. App. 1986); Southern v. Glenn, 677 S.W.2d 576 (Tex. App. 1984).
In Kovacich, the Texas Court of Appeals expressly held that personal jurisdiction within Section 1408(c)(4) refers to the domicile or residence of the former serviceman "at the time of the suit." 705 S.W.2d at 283. In Tarvin, the California Court of Appeals held that the statute precluded reference to "past residency." 187 Cal. App.3d at 61, 232 Cal. Rptr. at 16. [Emphasis in original]. In Mortenson, on facts legally identical to those here, the Minnesota Court of Appeals expressly rejected an argument for personal jurisdiction based on "past contacts." 409 N.W.2d at 23.
Of course, the protections of Section 1408(c)(4), like other limitations on a state's authority to acquire personal jurisdiction, may be waived. See Rule 12(b), Miss.R. Civ.P. Carpenter v. Allen, 540 So.2d 1334 1337 (Miss. 1989); O'Neill v. O'Neill, 515 So.2d 1208, 1211-12 (Miss. 1987); Brown v. Brown, 493 So.2d 961, 963 (Miss. 1986). Other states have recognized this waiver doctrine in cases where the defendant entered a general appearance or waived the service of process upon him. See Gowins v. Gowins, 466 So.2d 32, 36 (La. 1985); In re Marriage of Parks, 48 Wash. App. 166, 170, 737 P.2d 1316, 1318 (1987); Kildea v. Kildea, 143 Wis.2d 108, 420 N.W.2d 391 (1988). As William has made no appearance in this matter nor done anything else which might be construed as a present waiver, there is no basis upon we might find that within the meaning of Section 1408(c)(4)(C) that he has consented to the jurisdiction of the Mississippi court.
In sum, FUSFSPA provides three bases upon which the courts of this state may acquire in personam jurisdiction: (a) his residence in this state, other than because of military assignment; (b) his domicile in this state; or (c) his consent to the jurisdiction of the court. William's absence from Mississippi for fifteen continuous years precludes Section 1408(c)(4) personal jurisdiction by reason of residence or domicile.[3] *727 There is nothing in the present record that suggests a factual basis for the Chancery Court exercising authority over William on any of the three grounds of the statute. Accordingly, we can only affirm the holding of the Chancery Court that William was not amenable in this state to an adjudication of Joyce's claim of rights in his military retirement pension consistent with 10 U.S.C. § 1408(c)(4). Upon consideration and reflection, we may but affirm. See Mortenson v. Mortenson, supra, 409 N.W.2d at 23; Tarvin v. Tarvin, 187 Cal. App.3d at 61, 232 Cal. Rptr. at 16; Kovacich v. Kovacich, 705 S.W.2d at 283.

V.
Joyce also seeks to acquire personal jurisdiction over William for purposes of asserting and litigating her claim that she incurred $5,000.00 in debts by reason of William deserting in 1974. Personal jurisdiction here is not limited by 10 U.S.C. § 1408(c)(4). We take as true the allegations of her complaint. Those allegations include a debt incurred in Mississippi by reason of William's conduct in Mississippi. This is more than sufficient to render him amenable to personal jurisdiction in this state. See Penton v. Penton, 539 So.2d 1036, 1038 (Miss. 1989), and nothing in Rothschild v. Hermann, 542 So.2d 264, 265 (Miss. 1989), is to the contrary. On this issue the Chancery Court erred, by reason of which we reverse and remand to the Chancery Court for further proceedings consistent with this opinion. Joyce's claim for repayment of this indebtedness is, of course, subject to proof on her part and any defenses William may have or assert.
AFFIRMED IN PART, REVERSED IN PART AND REMANDED.
ROY NOBLE LEE, C.J., HAWKINS, P.J., and PRATHER, ANDERSON, PITTMAN and BLASS, JJ., concur.
DAN M. LEE, P.J., concurs in parts I, II, III and IV and dissents without opinion as to part V.
SULLIVAN, J., dissents.
SULLIVAN, Justice, dissenting:
My dissent to the majority's decision is twofold. First, in the majority interpreting the statute, and second, in its interpretation. It seems to me that this Court must initially consider the propriety of Mississippi chancery courts awarding a non-military spouse direct payments from the government. This needs to be addressed, considering Mississippi's marital property law, prior to interpreting the federal statute's jurisdictional section.
The majority cites authority in support of its proposition that in personam jurisdiction is to be addressed prior to considering the merits of the case. Of course, I acquiesce to this in the traditional "minimum contacts" analysis. But, here we are dealing with statutorily imposed "personal jurisdiction." The Federal Uniform Service Former Spouses' Protection Act, Title 10 U.S.C.A. § 1408(c)(4), only applies in jurisdictions that allow the outright award of military pension to the non-military spouse. This is a different animal entirely and is not merely a limitation on Mississippi's long arm statute.
Under the traditional in personam analysis, there is no doubt that our courts have jurisdiction over Mr. Petters. Congress, however, imposed another layer for jurisdiction when the subject matter is the division of military pension. If Mississippi does not allow the division of the pension then the statute would have no application whatsoever in our courts.
Section 1408(c)(4) does not merely require personal jurisdiction over the military member for any type of action. It deals with a certain subject, i.e., division of military pension. It addresses the relationship between the type of claim and the activities  type of contacts  not just the nature of the activities themselves as in the usual personal jurisdictional analysis.
There is no need for this Court to rule that we do or do not have personal jurisdiction under a federal statute if it has no *728 application. Accordingly, I feel the majority is wrong in interpreting the statute without deciding its application.
Secondly, however, it is clear to me that Powers v. Powers, 465 So.2d 1036 (Miss. 1985), stands for the proposition that Mississippi marital property law permits courts to divide, as alimony, a former spouse's military pension. The lower court awarded alimony in the sum of not less than $200.00 per month or one-half of the husband's gross naval retirement pay including increases, whichever is greater. This Court affirmed the trial court's decree based on the authority of the FUSFSPA.
This being true, then I still am of the opinion, more than ever, that the majority is in error. Its interpretation of the personal jurisdiction section is too restrictive. The residency prong of the statute must be interpreted to include past residency, other than because of military assignment. This would prevent multiple suits and comply with the purposes of the enactment of the jurisdictional section to prevent forum shopping.
The majority is quite correct in the jurisdictional limitation set out in FUSFSPA. A Mississippi court may not deal with the disposable retired pay of military personnel unless the court has jurisdiction by reason of (a) his residence in this state, other than because of military assignment; (b) his domicile in the jurisdiction of the court; or (c) his consent to the jurisdiction of the court. 10 U.S.C.A. § 1408(c)(4).
Under a very narrow, narrow interpretation of the statute, the conclusion reached by the majority would also be correct. The majority requires that William currently be a resident or domiciled in the State of Mississippi for our courts to have in personam jurisdiction over him. The facts of this case suggest that William is not presently a resident nor is he domiciled within the state.
William, however, was a past domiciliary and resident of Mississippi. His previous contacts with this state are extensive. He was born, raised, married, had four children, and divorced in Mississippi. During his entire military career, he was a domiciliary of Mississippi and for a vast majority of that career a resident of Mississippi. He did change his Mississippi residency in 1974 after he retired from the military.
If the congressional intent in enacting § 1408(c)(4) was to prevent forum shopping to protect military personnel, its application should not be based solely on the military spouse's present residence or domicile. Applying the residency prong of the statute based on William's past residency, the chancery court would have had personal jurisdiction under the statute. William's Mississippi residency was not solely by virtue of military assignments; he was not merely transferred here under military assignment.
This analysis of using past contacts could be applied to the domicile prong of 10 U.S.C.A. § 1408(c)(4). William was domiciled in Mississippi during his entire military career and moved it, as the majority holds, when he left Mississippi in 1974.
The most logical interpretation of § 1408(c)(4), considering congressional intent, however, is for the residency prong to be applied based on past contacts rather than the domicile prong. Therefore, in my opinion, the chancellor erred when he dismissed Joyce's petition to divide the military pension because of lack of personal jurisdiction under § 1408(c)(4). Joyce was in no way "forum shopping" by filing for divorce in Mississippi. It was the only place she could have filed for divorce. Our minimum contacts law support Mississippi's jurisdiction over William for the purpose of divorce, in determining his liability for child support, and for other forms of alimony. Mississippi should also have jurisdiction to adjudicate the division of William's military pension. Otherwise, Joyce would have to file for divorce in Mississippi; thereafter, file suit in Texas merely to get personal jurisdiction over William to adjudicate her right to be awarded a share of the military pension as alimony[1].
*729 Policy considerations favor the resolution of a divorce in a single proceeding. Under the facts of this case, this can only be accomplished by allowing the division of William's military pension by the Mississippi courts. Otherwise, there will be duplicative and piecemeal litigation. The rights created in FUSFSPA to ex-spouses of military personnel will be prohibitively expensive to enforce.
I would interpret the federal statute much more broadly than does the majority. If residency in Mississippi was other than because of military assignment the limiting personal jurisdiction section of FUSFSPA would be satisfied. It should not, from a practical standpoint, be limited to the military defendant's current residence. Accordingly, I would reverse and remand this case to the chancellor for a division of the military pension.
NOTES
[1] If we scrutinize Joyce's complaint under Rule 12(b)(6), we must keep in mind our current regime of quasi-notice pleadings. We may dismiss the complaint only if we can say that it

appear[s] to a certainty that the plaintiff is entitled to no relief under any set of facts that could be proved in support of the claim.
Lester Engineering Co., Inc. v. Richland Water & Sewer District, 504 So.2d 1185, 1187 (Miss. 1987); Bias v. Bias, 493 So.2d 342, 343-44 (Miss. 1986); Luckett v. Mississippi Wood, Inc., 481 So.2d 288, 290 (Miss. 1985); Busching v. Griffin, 465 So.2d 1037, 1039 (Miss. 1985); Franklin County Cooperative v. MFC Services (A.A.L.), 441 So.2d 1376, 1377 (Miss. 1983).
From this perspective, we can imagine two possibilities under which Joyce might recover. First, we know that William has lived in Texas since 1974. Texas is a community property state. See, e.g., Koepke v. Koepke, 732 S.W.2d 299, 300 (Tex. 1987); Grier v. Grier, 731 S.W.2d 931 (Tex. 1987). If Joyce can somehow show that William earned a part of his military retirement pension while domiciled in Texas, she may have an enforceable property right. See Haynes v. McIntosh, 776 S.W.2d 784, 786 (Tex. App. 1989); Newman v. Newman, 558 So.2d 821, 825 (Miss. 1990). Second, with but slight amendment to her pleading, Joyce may pursue a claim for alimony, the amount of which may be fixed by (partial) reference to the amount of William's military retirement pension. See Bowe v. Bowe, 557 So.2d 793, 795 (Miss. 1990); Colvin v. Colvin, 487 So.2d 840, 841 (Miss. 1986).
[2] Consider a hypothetical example, legally analogous unto today's case. Mutt and Schmuck, lifelong residents of Arkansas enter into a pre-nuptial agreement providing, inter alia, that, in addition to any grounds for divorce provided by law, the parties recognize as an additional ground picking one's teeth in public. Mutt and Schmuck marry. Three years later Mutt moves to Mississippi, satisfies the residency requirement, and then files in the chancery court of the county of her new residence a suit for divorce, asserting as grounds that Schmuck has habitually picked his teeth in public. Schmuck moves to dismiss, invoking (1) Rule 12(b)(2), urging that he may not be subjected to personal jurisdiction in Mississippi and (2) Rule 12(b)(6), arguing that the new "grounds" in the pre-nuptial agreement are not enforceable under Mississippi law or in a Mississippi court. Of course, Schmuck is right on his Rule 12(b)(6) motion, but the court may not consider it until it has overruled Schmuck's Rule 12(b)(2) motion and decided that Schmuck is "in court."
[3] Nothing said here is inconsistent with our general rule that a party asserting that another has changed his state of domicile has the burden of proving the change. See Newman v. Newman, 558 So.2d 821 (Miss. 1990). Recalling that William retired from the Air Force in 1972, and that he has not lived in Mississippi since 1974, renders it all but inconceivable that William has not changed his domicile from Mississippi.
[1] It appears to me that Mississippi law would apply under a conflicts analysis by a Texas court.