568 So.2d 281 (1990)
Mary Janice SOUTHERN (formerly Mary Janice Glenn)
v.
James Jerry GLENN.
No. 07-CA-59364.
Supreme Court of Mississippi.
October 3, 1990.
*282 W.E. Gore, Jr., Jackson, MS, for Appellant.
Jonathan B. Fairbank, Cupit Jones & Fairbank, Jackson, MS, for Appellee.
En Banc.
ROBERTSON, Justice, for the Court:

I.
This is another case in which a former wife seeks a share of her former husband's military retirement pension long after the parties were divorced. Because the pension was not mentioned nor rights in it adjudged in the divorce proceeding, property rights in it are properly a subject of current litigation. The Chancery Court held that the law of this state applied and *283 denied the wife's claim. Because the Court fundamentally misunderstood the controlling law and the importance of finding the serviceman's state of domicile during his term of active duty, we reverse.

II.
Mary Janice Southern, formerly Mary Janice Glenn, is an adult resident citizen of Bexar County, Texas. Southern was the Plaintiff below and is the Appellant here.
James Jerry Glenn is an adult resident citizen of Taylorsville in Smith County, Mississippi. Glenn was the Defendant below and is the Appellee here.
Glenn grew up in Taylorsville, and on July 15, 1960, he enlisted in the United States Army. Without doubt, he was a domiciliary of Smith County, Mississippi, at that time. On November 2, 1962, Glenn and Southern were married in San Antonio, Texas. The parties remained married to each other for almost twenty years.
On May 17, 1982, the District Court for the Forty-Fifth Judicial District, Bexar County, Texas, entered its final judgment declaring Glenn and Southern divorced and restoring to Southern her maiden name.
At approximately the same time, Glenn retired from the Army. On April 18, 1982, Glenn took terminal leave and returned to Mississippi, and has resided in Taylorsville ever since. On May 31, 1982, Glenn was formally retired from the United States Army. He began receiving military retirement benefits in June of 1982.
On November 10, 1982, Southern brought suit in the District Court of Bexar County, Texas, asserting a property right in Glenn's military retirement pension under the community property laws of the State of Texas and asking for a judicial partition of the benefits of that pension. The District Court dismissed the action for lack of personal jurisdiction over Glenn. Southern appealed to the Court of Civil Appeals, Fourth Supreme Judicial District of Texas. The Court of Appeals affirmed. Southern v. Glenn, 677 S.W.2d 576 (Tex. App. 1984). En route the Court held that the matter of personal jurisdiction was governed by the Federal Uniformed Services Former Spouses' Protection Act, (FUSFSPA) 10 U.S.C. § 1408(c)(4). The Texas court correctly observed that the personal jurisdiction standards of the FUSFSPA are more restrictive than the familiar minimum contacts standard, see, e.g., Petters v. Petters, 560 So.2d 722, 725 (Miss. 1990); Kulko v. California Superior Court, 436 U.S. 84, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1978). The Court of Appeals credited trial court findings of fact that Glenn was not at the time a resident of Texas and on that basis affirmed. What is important is that the Texas courts never reached the merits of Southern's partition suit.
On February 3, 1987, Southern filed her complaint in the Chancery Court of Smith County, Mississippi, again asserting a property right under the Texas community property laws and demanding a judgment for partition of Glenn's military retirement pay. The case was heard upon stipulated facts, and on May 7, 1988, the Chancery Court entered final judgment holding that Southern's rights, if any, in Glenn's military retirement pension were to be determined according to Mississippi law and that under our law, Southern had no property rights in Glenn's pension. The Court then dismissed Southern's complaint.
Southern now prosecutes an appeal to this Court.

III.
Texas is a community property state, and it appears that, if Texas law controls, Southern may well be entitled to relief. See, e.g., Haynes v. McIntosh, 776 S.W.2d 784, 786 (Tex. App. 1989); Koepke v. Koepke, 732 S.W.2d 299, 300 (Tex. 1987); Harrell v. Harrell, 692 S.W.2d 876 (Tex. 1985); Southern v. Glenn, 677 S.W.2d at 580. On the other hand, Mississippi law confers upon a spouse no property right as such in a serviceman's military retirement pay.[1]See Colvin v. Colvin, 487 So.2d 840, *284 841 (Miss. 1986); Powers v. Powers, 465 So.2d 1036, 1037 (Miss. 1985). In these situations Newman v. Newman, 558 So.2d 821 (Miss. 1990) holds that the matter of whether the spouse of a serviceman has a vested right in the military retirement pension is governed by the law of the state (or states, pro rata) of domicile during the term of active duty service, the term during which the pension is earned.
Indisputably, Glenn was a Mississippi domiciliary up until the time of his enlistment in the Army. Twenty-two years later he resumed residency here and has maintained Mississippi as his state of domicile since that time. The outcome determinative question is whether and for how long Glenn remained a Mississippian during his active duty tenure with the Army  the period from July 15, 1960, until May 31, 1982.[2]
In a case such as this, Southern has the burden of producing evidence that Glenn changed his domicile to the State of Texas and further of persuading the court that the evidence preponderates to that effect. See Newman v. Newman, supra; Hopkins v. Wilson, 212 Miss. 404, 420, 54 So.2d 661, 663 (1951); Jones v. State ex rel. McFarland, 207 Miss. 208, 213, 42 So.2d 123, 125 (1949); Bilbo v. Bilbo, 180 Miss. 536, 550, 177 So. 772, 776 (1938); Clay v. Clay, 134 Miss. 658, 662, 99 So. 818, 818 (1924). Southern offered a stipulation of facts which show that the parties were married in Texas in 1962 and divorced in Texas in 1982. The Texas proceedings reflect that Glenn and Southern resided in Texas for most of their married life and even noted that Glenn voted in the 1976 presidential election in Texas and held a Texas driver's license.
Our problem is that the Chancery Court made no finding on the matter of Glenn's domicile. The Court appears not to have appreciated the importance of the point. A finding that Glenn at all times remained a Mississippi domiciliary is absolutely requisite to the judgment entered below. Though the evidentiary facts are stipulated and largely documentary, they are in conflict and are inconclusive, such that on this record we may not fairly infer Glenn's state of domicile during the operative period of time.[3]See Dycus v. Sillers, *285 557 So.2d 486, 504 n. 70 (Miss. 1990); Tricon Metals & Services, Inc. v. Topp, 516 So.2d 236, 238-39 (Miss. 1987); Pace v. Owens, 511 So.2d 489, 492 (Miss. 1987). Under these circumstances we have no choice but to credit Southern's appeal.
We reverse the judgment entered below and remand this matter to the Chancery Court for adjudication of Southern's partition claim under the principles of Newman v. Newman, supra, and specifically for findings regarding Glenn's state of domicile for the legally operative period of time. We leave to the sound discretion of the Chancery Court the matter of whether it should proceed upon the proof already before it or reopen the record and allow the parties to offer additional proof.
REVERSED AND REMANDED.
LEE, ROY NOBLE, C.J., PRATHER, SULLIVAN, PITTMAN and BLASS, JJ., concur.
DAN M. LEE and HAWKINS, P.JJ., and ANDERSON, J., dissent with separate opinion.
DAN M. LEE, Presiding Justice, dissenting:

I.
Suits filed pursuant to 10 U.S.C. § 1408 require two (2) determinations by a trial court. First, the court into which the plaintiff comes must determine that it has personal jurisdiction over the defendant, as defined in 10 U.S.C. § 1408(c)(4), at the time the suit is filed. 10 U.S.C. § 1408(c)(4). Accord Petters v. Petters, 560 So.2d 722 (Miss. 1990). Second, the trial court must determine which state's laws apply based on proof of domicile during the period in which the benefits were earned. 10 U.S.C. § 1408(c)(1). Accord, Newman v. Newman, 558 So.2d 821 (Miss. 1990). The burden of proving domicile during the period in which the benefits were earned rests with the party seeking to partake of the benefits. Newman v. Newman, 558 So.2d 821 (Miss. 1990).
The majority bases today's decision on the Chancellor's failure to specifically determine Glenn's domicile during the operative period of time, July 15, 1960 through May 31, 1982. However, in rendering its decision the majority has ignored the procedural history of this case: the issue of Glenn's domicile during the pertinent period of time was fully litigated and decided in the Texas courts and, thus, became the law of the case. Because the majority chooses to ignore this determination, as well as our standard of review of Chancery Court decisions, I respectfully dissent.

II.

A.
Southern entered Texas state court seeking a share of her former husband's military retirement pension in accordance with Texas law and ran head long into Glenn's challenge of personal jurisdiction of the Texas state court in light of 10 U.S.C. § 1408. Southern v. Glenn, 677 S.W.2d 576, 579 (Tex. App. 4 Dist. 1984). Glenn's challenge presented the Texas courts with a first impression case. Id. at 582.
The Texas trial court conducted a hearing in which the personal jurisdiction and domicile issues were fully litigated. Glenn made a special appearance at this hearing and testified that his domicile from birth until that moment had been, and remained, in Mississippi. Id. at 583. In rendering its opinion, the Texas trial court found, inter alia, that (1) Glenn was a domiciliary and resident of Mississippi when he entered the Army in 1960; (2) at the time of the 1982 divorce proceedings in Texas Glenn was a domiciliary and citizen of the State of Mississippi; and (3) "[a]t all times that Defendant served in the Armed Forces of the *286 United States of America he was a citizen and domiciliary of the State of Mississippi although a resident of other states without the State of Mississippi pursuant to military orders." Id. at 580. Holding that the personal jurisdiction requirements under 10 U.S.C. § 1408(c)(4) superseded Texas law, the Texas trial court dismissed Southern's partition suit for lack of personal jurisdiction. Id. at 579. Southern challenged these findings on appeal. Id. at 581.
The Texas Court of Appeals upheld the findings and decision of the Texas state court. While noting that Glenn and Southern resided in Texas for most of their married life, that Glenn voted in the 1976 presidential election in Texas and held a Texas driver's license, the Court of Appeals went on to say
The absence of an affirmative showing that a person in military service has taken action to change his domicile at the time of entering the service, there is a presumption that the domicile remains where it was when the person entered military service. See Hagle v. Leeder, 442 S.W.2d 908, 909 (Tex.Civ.App. 1969). This presumption is rebuttable.
The trial Court filed findings of fact that Mississippi is defendant's [Glenn's] domicile. Where specific findings are filed by the trial court and a statement of fact is before the appellate court, as here, the findings will be sustained if there is any evidence to support them. We find the record discloses sufficient evidence to justify the findings of fact that defendant is domiciled in Mississippi; we therefore sustain those findings.
Southern v. Glenn, 677 S.W.2d 576, 583-84 (Tex. App. 1984). The Texas Court of Appeals noted that Southern could file for partition in Mississippi. Id. at 583-84.

B.
Southern filed suit seeking a portion of Glenn's military retirement benefits under 10 U.S.C. § 1408 in the United States District Court for the Southern District of Mississippi. This suit was dismissed for lack of subject matter jurisdiction.
Southern then filed suit seeking a portion of Glenn's military retirement benefits under 10 U.S.C. § 1408 in the Chancery Court of Smith County, Mississippi. Southern's suit was submitted to the Chancellor of Smith County for determination on the merits on stipulated facts and documentation. The stipulated facts were (1) the action was filed pursuant to 10 U.S.C. § 1408; and (2) the Chancery Court of Smith County had jurisdiction over the parties and the subject matter. The first determination required of the Chancellor under 10 U.S.C. § 1408(c)(4) had been made by stipulation; the Chancellor was left with the second determination, that is, a choice of law question, and ultimate disposition of the suit.

C.
The majority correctly notes that for Southern to be entitled to a judgment granting her a portion of Glenn's retirement benefits by our courts, she had to meet her burden and prove that Texas was the state of domicile during the period in which the benefits were earned, for Mississippi law confers upon a spouse no property right as such in a serviceman's military retirement pay as does a community property state, such as Texas. Majority opinion at 283. This is so because our law is clear: The domicile of the service(wo)man during the period of service in the armed forces controls which state's law are to be applied when courts of this state must determine how much, if any, of the retirement pay is to be apportioned. Newman v. Newman, 558 So.2d 821, 825 (Miss. 1990).
Glenn's domicile during his period of service in the armed forces was fully litigated and decided in the Texas trial court and upheld in the Texas Court of Appeals  his domicile was, had always been, and remained, Mississippi. At the moment Southern filed suit in Mississippi, the decision of the Texas court regarding Glenn's domicile became the law of the case. See Simpson v. State Farm, 564 So.2d 1374 (1990); Florida Gas Exploration Co. v. Searcy, 385 So.2d 1293, 1295 (Miss. 1980); Continental Turpentine & Rosin Co. v. Gulf Naval Stores Co., 244 Miss. 465, 142 So.2d 200 (1962); Mississippi College v. May, 241 *287 Miss. 359, 128 So.2d 557 (1961); Brewer v. Browning, 115 Miss. 358, 76 So. 267 (1917).
The Smith County Chancellor was aware of the Texas court's determination of Glenn's domicile because the parties had submitted this information to him for consideration. Faced, as he was, with determinations on both prongs required by 10 U.S.C. § 1408(c)(4), the only determination left for the Chancellor was the ultimate disposition of the suit.
The Chancellor applied Mississippi law and dismissed Southern's claim with prejudice. In so doing, he failed to make a specific finding regarding Glenn's domicile during the period in question and this, says the majority, shows that the Chancellor "fundamentally misunderstood the controlling law and the importance of finding the serviceman's state of domicile during his term of active duty" and, therefore, we must reverse and remand for this specific determination. Majority opinion at 1. This point is specious for two reasons.
First, contrary to the majority's statement, I believe that the Chancellor in this case understood exactly what was required in this case and acted accordingly. Southern came into court in Mississippi with Glenn's domicile for the critical period predetermined by the Texas Court of Appeals. See Southern v. Glenn, 677 S.W.2d 576, 579 (Tex. App. 4 Dist. 1984). If at that time, which I recognize was the first time she was allowed to litigate her claim on the merits, she wished to challenge that finding on the basis of "non-essential finding" and relitigate that determination, she was free to do so; she chose to rest on the findings of the Texas court. The Chancellor correctly determined the case: he had personal jurisdiction pursuant to 10 U.S.C. § 1408(c)(4); he had a Texas Court of Appeals finding that Mississippi was the state of domicile during the period in question and no proof to the contrary offered; he applied Mississippi law and dismissed the complaint. I see no error in this decision.
Second, under this Court's well established standard of review, the findings of a Chancellor will not be disturbed when supported by substantial evidence unless the Chancellor was manifestly wrong, clearly erroneous or an erroneous legal standard was applied. Bowers Window and Door Co., Inc. v. Dearman, 549 So.2d 1309 (Miss. 1989), citing Culbreath v. Johnson, 427 So.2d 705, 707-08 (Miss. 1983); Johnson v. Hinds County, 524 So.2d 947, 956 (Miss. 1988); Gibson v. Manuel, 534 So.2d 199, 204 (Miss. 1988); Bell v. City of Bay St. Louis, 467 So.2d 657, 661 (Miss. 1985). When a Chancellor fails to make findings of fact on issues of fact, this Court assumes that the issues were resolved in favor of the Appellee. Bryant v. Cameron, 473 So.2d 174, 179 (Miss. 1985). See also Wing v. Wing, 549 So.2d 944, 948-49 (Miss. 1989); Cotton v. McConnell, 435 So.2d 683, 685 (Miss. 1983).
The Chancery Court of Smith County made no specific finding on the matter of Glenn's domicile during the period in question. Such a finding was not necessary, given that the issue of Glenn's domicile had been fully litigated and finally determined in Texas, Southern v. Glenn, supra, the Chancellor had been apprised of this finding, and Southern offered no evidence to the contrary. In addition, based on our previously cited authority, even absent the prior determination of domicile, we infer the necessary finding: Glenn's domicile during the period in question was Mississippi, as Southern failed to meet her burden of proof to establish Texas as the state of domicile during the period the retirement benefits were earned.

III.
In my opinion, based on the facts before the trial court and our standard of review, the Chancellor's decision in this case was supported by substantial evidence, not manifestly wrong nor clearly erroneous, nor was an erroneous legal standard applied. Accordingly, I would affirm.
HAWKINS, P.J., and ANDERSON, J., join this dissent.
NOTES
[1] A spouse's military retirement pension is an asset which the court, considering matters such as alimony and child support incident to a divorce, and, thereafter modification of either of each, is certainly charged to consider. Bowe v. Bowe, 557 So.2d 793, 795 (Miss. 1990). As Mississippi is not a community property state, however, the spouse has no vested right in the serviceman's military retirement pension.
[2] It is true that the Texas court found as a fact that Glenn was a Mississippi domiciliary at the time he entered the United States Army and that he retained his Mississippi domicile throughout his military service. Southern v. Glenn, 677 S.W.2d at 580. The only question finally decided by the Texas courts was personal jurisdiction and that in the negative. Southern v. Glenn, 677 S.W.2d at 584. That question required the court to inquire only into Glenn's "present" domicile, his domicile in November, 1982, when his ex-wife filed her partition suit in Texas. See Petters v. Petters, 560 So.2d 722, 725 (Miss. 1990); Kovacich v. Kovacich, 705 S.W.2d 281, 283 (Tex. App. 1986); Tarvin v. Tarvin, 187 Cal. App.3d 56, 61, 232 Cal. Rptr. 13, 16 (1986); Mortenson v. Mortenson, 409 N.W.2d 20, 22-23 (Minn.App. 1987). Glenn's pre-November, 1982, domicile was legally irrelevant to the FUSFSPA personal jurisdiction issue before the Texas courts.

We have considered whether Texas' sweeping finding ought preclude Southern's "relitigation" in Mississippi of the issue of Glenn's domicile during his years of military service. We have rejected the notion, as collateral estoppel precludes relitigation only of issues necessarily decided en route to judgment in the prior action. See Newman v. Newman, 558 So.2d 821 (Miss. 1990); Riley v. Moreland, 537 So.2d 1348, 1354 (Miss. 1989); In re Estate of Smiley, 530 So.2d 18, 25 (Miss. 1988); Welborn v. Lowe, 504 So.2d 205, 207 (Miss. 1987); Mississippi Employment Security Commission v. Philadelphia Municipal Separate School District, 437 So.2d 388, 396 (Miss. 1983). Deciding Glenn's domicile between July 15, 1960, and May 31, 1982, or any part of that time, was in no way essential to the Texas court's decision of the personal jurisdiction issue.
[3] We have said repeatedly that we will not overturn a trial court's finding of fact which is supported by substantial evidence, unless that court has applied an erroneous legal standard. See, e.g., Grafe v. Olds, 556 So.2d 690, 692 (Miss. 1990); Leatherwood v. State, 539 So.2d 1378, 1387 (Miss. 1989); Johnston v. Hinds County, 524 So.2d 947, 956 (Miss. 1988). Conversely, where a trial judge sitting without a jury has applied an erroneous legal standard in deciding a question of fact, we have not hesitated to reverse. See, e.g., Clardy v. National Bank of Commerce, 555 So.2d 64, 66-67 (Miss. 1989); McClendon v. State, 539 So.2d 1375, 1377-78 (Miss. 1989); Ellzey v. Fyr-Pruf, Inc., 376 So.2d 1328, 1331-32 (Miss. 1979). Analogously, when reviewing matters committed to a trial court's sound discretion, our scope of review is substantially broader where we find that Court has acted under a substantial misperception of the correct legal standard. Nationwide Mutual Insurance Co. v. Evans, 553 So.2d 1117, 1119 (Miss. 1989); Burkett v. Burkett, 537 So.2d 443, 446 (Miss. 1989); Detroit Marine Engineering v. McRee, 510 So.2d 462, 467 (Miss. 1987). The Chancery Court in the case at bar was under a substantial misperception of the correct legal standard.