924 So.2d 596 (2006)
William Lloyd LOFTON, Appellant
v.
Irma Joyce LOFTON, Appellee.
No. 2004-CA-01448-COA.
Court of Appeals of Mississippi.
March 14, 2006.
*597 J.C. Ainsworth, Jr., Monticello, for appellant.
William D. Boerner, Bradley Russell Boerner, Brookhaven, for appellee.
EN BANC.
GRIFFIS, J., for the Court.
¶ 1. We consider whether the Mississippi court had jurisdiction to modify separate maintenance payments to permanent alimony after a Florida court entered a final divorce decree. We conclude that it did. Therefore, we affirm.

*598 PROCEDURAL HISTORY
¶ 2. William and Irma Joyce Lofton were married on May 19, 1972. They resided in Lincoln County, Mississippi during their marriage. They separated in October of 1995. Thereafter, William moved to Louisiana, and in 1998, he moved from Louisiana to Florida.
¶ 3. On May 10, 1996, Irma filed a complaint for divorce in the Chancery Court of Lincoln County, Mississippi. The chancellor never rendered a judgment of divorce. According to the clerk's docket sheet, Irma filed an amended complaint for separate maintenance on October 16, 1997.
¶ 4. On March 25, 1998, the chancellor held a hearing on Irma's amended complaint for separate maintenance. William failed to appear. The same day, the chancellor entered a final judgment of separate maintenance. The chancellor ordered William to pay Irma $400 per month in separate maintenance payments, and the obligation began on April 1, 1998.
¶ 5. William failed to make the required separate maintenance payments. On April 7, 2003, the chancellor executed an agreed order that gave William until December 1, 2003, to bring his separate maintenance arrearage current.
¶ 6. On October 2, 2003, William filed for divorce in the Circuit Court of the Ninth Judicial Circuit of Orange County, Florida. Irma was served with process at her home in Mississippi.
¶ 7. On December 1, 2003, the Mississippi chancellor executed a second agreed order that extended the deadline for William to pay the past due separate maintenance until August 19, 2004.
¶ 8. On December 16, 2003, the Florida court entered its "Final Judgment of Dissolution of Marriage." Irma did not respond to the process served on her, and she never appeared before the Florida court. According to the Florida judgment of divorce, the Florida court determined that it had jurisdiction over the subject matter and the parties. Further, the Florida judgment of divorce stated that William was a continuous resident of Florida for more than six months prior to his filing for divorce. Additionally, the Florida judgment of divorce recognized that the couple had one son who was of majority age. As for property division, the Florida judgment stated that the couple had no marital assets or debts for division. Regarding spousal support, the Florida judgment of divorce provided that "[t]here are no claims of alimony or spousal support in these proceedings." The Florida judgment of divorce also included a provision that stated, "Except with respect to the dissolution of marriage granted herein, the [Florida] Court reserves jurisdiction to enforce this Final Judgment."
¶ 9. On December 22, 2003, Irma filed a pro se motion that asked the Florida court to "acknowledge and confirm the support. . . adjudicated in Mississippi." Subsequently, Irma amended the motion and titled it an "Amended Motion for Rehearing." By order dated January 7, 2004, the Florida court denied Irma's amended motion as not providing a basis for rehearing and that the relief sought could not be sought through a motion.
¶ 10. On December 30, 2003, William paid Irma the balance of his separate maintenance arrearage. William also filed a petition in the Lincoln County Chancery Court. In that petition, William cited the fact that, by virtue of the Florida judgment of divorce, he was no longer married to Irma. Further, William asked the chancellor to dismiss his obligation to pay separate maintenance. Irma responded and filed a cross-petition to convert William's separate maintenance obligation into an obligation to pay permanent alimony.
*599 ¶ 11. The chancellor conducted a hearing and ordered that: (1) William owed Irma $2,400 in overdue separate maintenance payments, (2) William was to satisfy the arrearage in the amount of $50 per month, and (3) William's obligation to pay separate maintenance became an obligation to pay permanent alimony in the amount of $275 per month. It is from this order of the Lincoln County Chancery Court that William appeals. The issue for our consideration is the chancellor's decision to award permanent alimony. We affirm.

STANDARD OF REVIEW
¶ 12. A chancellor's decision to award alimony, as well as the amount, is left to the chancellor's discretion. Voda v. Voda, 731 So.2d 1152, 1154(¶ 7) (Miss. 1999). "Unless the chancellor is in manifest error and abused his discretion, we will not reverse." Id. However, we review questions of law according to the de novo standard. Townsend v. Townsend, 859 So.2d 370, 372(¶ 7) (Miss.2003).

ANALYSIS
¶ 13. William claims that the chancellor committed reversible error when he declined to terminate William's separate maintenance obligation and modified it to permanent alimony. William argues that Irma failed to assert her claim for permanent alimony during the Florida divorce proceedings and, as such, the chancellor should have barred Irma's claim for alimony. William argues that the Florida divorce operates as res judicata to Irma's request for permanent alimony, and the chancellor was required to extend full faith and credit to the Florida divorce action.
¶ 14. "The doctrine of res judicata reflects the refusal of the law to tolerate a multiplicity of litigation." Little v. V. & G Welding Supply, Inc., 704 So.2d 1336, 1337(¶ 8) (Miss.1997). "It is a doctrine of public policy designed to avoid the expense and vexation attending multiple lawsuits, conserve judicial resources, and foster reliance on judicial action by minimizing the possibilities of inconsistent decisions." Id. (internal quotations omitted). "Res judicata bars all issues that might have been (or could have been) raised and decided in the initial suit, plus all issues that were actually decided in the first cause of action." Id. (citing Estate of Anderson v. Deposit Guar. Nat'l Bank, 674 So.2d 1254, 1256 (Miss.1996)).
¶ 15. "Article IV, § 1 of the United States Constitution requires that full faith and credit be given to the judicial proceedings of sister states." Kolikas v. Kolikas, 821 So.2d 874, 880(¶ 34) (Miss.Ct. App.2002). "However, those proceedings are only entitled to full faith and credit where the rendering court properly has subject matter and personal jurisdiction." Id. The United States Supreme Court has applied the Full Faith and Credit Clause in the context of divorce actions.
¶ 16. In Davis v. Davis, 305 U.S. 32, 35, 59 S.Ct. 3, 83 L.Ed. 26 (1938), the district court for the District of Columbia ordered the husband to pay his wife monthly payments incident to a "decree of separation." Thereafter, the husband moved from Washington, D.C. to Virginia, and he filed for divorce. Id. at 36, 59 S.Ct. 3. The wife, a resident of Washington, D.C., appeared in the Virginia divorce action and contested the validity of the husband's Virginia residency. Id. The Virginia court granted the husband's request for a divorce. Id. at 37, 59 S.Ct. 3.
¶ 17. The husband then returned to the D.C. court and attempted to have the "decree of separation" set aside on the basis of the Virginia divorce. Id. at 38, 59 S.Ct. 3. The D.C. court refused to extend full *600 faith and credit to the Virginia divorce decree. Id. The D.C. court reasoned that Virginia lacked jurisdiction. Id. The husband appealed to the U.S. Supreme Court. The Supreme Court noted that the wife appeared in the Virginia divorce proceedings and litigated the status of her husband's residency. Id. at 40, 59 S.Ct. 3. Accordingly, the Court held that the D.C. court erred when it refused to extend full faith and credit to the Virginia divorce decree. Id. at 43, 59 S.Ct. 3.
¶ 18. Next, in Coe v. Coe, 334 U.S. 378, 379, 68 S.Ct. 1094, 92 L.Ed. 1451 (1948), the couple lived in Massachusetts. They separated and remained in Massachusetts. Id. The wife then filed a petition for "separate support" in Massachusetts, which was granted. Id. at 380, 68 S.Ct. 1094. Thereafter, the husband moved to Nevada, where he filed for divorce. Id. The wife received notice of the proceedings and went to Nevada, where she filed an answer and took part in a Nevada divorce hearing. Id. The Nevada court then granted the husband's request for a divorce. Id. at 381, 68 S.Ct. 1094.
¶ 19. The wife then went back to Massachusetts and filed a contempt action, based on the Massachusetts support order. Id. The husband cited the Nevada divorce and claimed that the Nevada divorce decree barred the wife's Massachusetts contempt action. Id. at 382, 68 S.Ct. 1094. The Massachusetts court held that the husband went to Nevada to seek a divorce and that neither the husband nor the wife were residents of Nevada. Id. Consequently, the Massachusetts court concluded that Nevada did not have jurisdiction over either party and that the Nevada divorce violated Massachusetts law. Id. The Massachusetts court also modified the Massachusetts support order and gave the wife a "substantially larger allowance." Id. at 382, 68 S.Ct. 1094. The husband appealed.
¶ 20. The Supreme Court recognized that the wife went to Nevada, filed an answer in the Nevada divorce action, and took part in the Nevada divorce hearing. Id. at 383. Consequently, the Court reversed the Massachusetts court and held that the Nevada divorce was valid and could not be subjected to collateral attack in Massachusetts. Id. Further, the Court held that "the requirements of full faith and credit preclude the courts of a sister state from subjecting such a decree to collateral attack by readjudicating the existence of jurisdictional facts." Id. at 384, 68 S.Ct. 1094.
¶ 21. Along with Coe, the Supreme Court handed down Estin v. Estin, 334 U.S. 541, 68 S.Ct. 1213, 92 L.Ed. 1561 (1948), and again applied the full faith and credit clause in a divorce action. In Estin, the wife went before a New York state court and obtained a "decree of separation." Id. at 542, 68 S.Ct. 1213. Incident to the "decree of separation," the New York court ordered the husband to pay the wife $180 per month in "permanent alimony." Id. at 542-43, 68 S.Ct. 1213.
¶ 22. The husband then moved from New York to Nevada, where he filed for divorce. Id. at 543, 68 S.Ct. 1213. The husband served the wife with constructive service of process, but she never entered an appearance in the Nevada divorce action. Id. Still, the Nevada court granted the husband's request for a divorce. Id. After he received his Nevada divorce, the husband stopped paying "permanent alimony" as ordered by the New York court's "decree of separation." Id.
¶ 23. Back in New York, the wife attempted to collect the support arrearage pursuant to the New York order. Id. The husband claimed that the Nevada divorce decree invalidated the New York support *601 order. Id. The New York court ruled in favor of the wife and granted the wife's request for support arrearage. Id. The husband appealed.
¶ 24. The Supreme Court affirmed the New York court's decision and held that the Nevada divorce action was divisible from the action in New York because the Nevada court did not have personal jurisdiction over the wife. Id. at 547, 68 S.Ct. 1213. Additionally, the Estin Court held that "[a] judgment of a court having no jurisdiction to render it is not entitled to the full faith and credit which the Constitution. . . demand[s]." Id. at 549, 68 S.Ct. 1213.
¶ 25. In Cook v. Cook, 342 U.S. 126, 72 S.Ct. 157, 96 L.Ed. 146 (1951), the Supreme Court listed three incidents that barred a party to a divorce from instituting a collateral attack upon a foreign divorce decree. Accordingly, a party to a divorce may not collaterally attack a foreign divorce decree if: (1) the defendant spouse appeared in the foreign proceedings and contested the pleading spouse's domicile, or (2) the defendant spouse appeared and admitted to his or her spouse's status as a resident of the foreign state, or (3) the defendant spouse was personally served in the state where the divorce action was filed. Id. at 127, 72 S.Ct. 157. The underlying presumption for all three incidents is that a party may not institute a collateral attack upon a foreign divorce decree if the foreign court had personal jurisdiction over the parties.
¶ 26. In Vanderbilt v. Vanderbilt, 354 U.S. 416, 77 S.Ct. 1360, 1 L.Ed.2d 1456 (1957), the Supreme Court once again applied the full faith and credit clause incident to a divorce action. The Court held that a Nevada divorce decree was entitled to full faith and credit in a subsequent New York action for separation and alimony brought by the wife, who was not served with process in Nevada and did not appear in that action. Id. at 417, 77 S.Ct. 1360. Still, the Court also held that the Nevada divorce court lacked authority to extinguish the wife's right to support under the laws of New York. Id. at 418, 77 S.Ct. 1360. The Court also cited the principle that "a court cannot adjudicate a personal claim or obligation unless it has jurisdiction over the person of the defendant." Id. Accordingly, the Court held that:
the Nevada divorce court was as powerless to cut off the wife's support right as it would have been to order the husband to pay alimony if the wife had brought the divorce action and he had not been subject to the divorce court's jurisdiction. Therefore, the Nevada decree, to the extent it purported to affect the wife's right to support, was void and the Full Faith and Credit Clause did not obligate New York to give it recognition.
Id. at 418-19, 77 S.Ct. 1360.
¶ 27. Clearly, the cases cited indicate that a divorce action involving multiple states is "divisible." That is, a divorce action involving one resident party and one foreign party may or may not be able to adjudicate personal rights, though it can sever a marriage as long as at least one party is a resident of that state. This concept is not unfamiliar in Mississippi. In Weiss v. Weiss, 579 So.2d 539, 540 (Miss.1991), the Mississippi Supreme Court held that "[u]nder Mississippi law, the litigation of divorce and of alimony are divisible or separable."
¶ 28. In Weiss, the court considered whether a Mississippi court had jurisdiction to determine alimony when the parties divorced in Louisiana but did not litigate alimony. The husband filed a complaint for divorce in Louisiana, and one month later, the wife filed a complaint for separate *602 maintenance in Mississippi. Id. at 540. The Louisiana court granted the husband's request for a divorce. Id. The Louisiana divorce decree dismissed the wife's request for alimony but reserved her right to litigate alimony at a later date. Id.
¶ 29. The wife then pursued her claim for separate maintenance in Mississippi. Id. Both parties conceded to the chancellor's authority to divide their property. Id. The chancellor ordered the husband to pay the wife periodic alimony payments, and the husband appealed. Id. The Supreme Court held that the chancellor's determination of alimony did not offend the doctrine of res judicata because "where the case in the foreign court is not decided on its merits, while suit might be barred from any other court in the state where the judgment was rendered it is not res judicata in Mississippi." Id. at 541. The court also ruled that "alimony was not litigated in the prior Louisiana divorce decree proceedings [because] the decree plainly states that [the wife's] demand for alimony was dismissed with reservation of her right to litigate . . . later." Id.
¶ 30. In Chapel v. Chapel, 876 So.2d 290 (Miss.2004), our supreme court once again examined the doctrine of res judicata in the context of a foreign divorce decree. In Chapel, the husband filed for divorce in Mississippi. Id. at (¶ 1). The chancellor denied the divorce and ordered the husband to pay separate maintenance to the wife. Id. The husband then moved to Virginia, where he filed for and received a divorce. Id. The Virginia decree did not determine alimony. Id.
¶ 31. For the next five years, the parties filed numerous motions in Mississippi. Id. at (¶ 2). Eventually, the parties reached an agreement regarding child custody, support, property distribution, and all other matters then before the chancellor. Id. The parties had the chancellor enter an order that corresponded to their agreement. Id. The chancellor's order modified the terms of the separate maintenance obligation. Id. The wife refused to sign the judgment and filed an unsuccessful motion for relief under M.R.C.P. 60(b)(1). Id.
¶ 32. The supreme court affirmed the chancellor's decision and held that res judicata did not bar the chancellor's actions. Id. at (¶ 3). The supreme court concluded that, "[a]lthough the parties' pleadings were for contempt of the original judgment, the parties consented to the chancellor's authority to modify and decide issues not resolved by the Virginia divorce." Id. at (¶ 18).
¶ 33. We are of the opinion that the United States Supreme Court and Mississippi Supreme Court cases cited above require that we consider two issues. First, we must determine whether the Florida court had personal jurisdiction over Irma. If it did, then we must consider whether the Florida court resolved or otherwise considered the matter of alimony. If the Florida court had personal jurisdiction over Irma and adjudicated the issue of alimony, then we must extend full faith and credit to the Florida court's decision.
¶ 34. William begins by stating that Irma was validly served with process under Florida's long arm statute. We disagree. To obtain personal jurisdiction over a nonresident spouse in an alimony suit in Florida, the nonresident spouse "personally or through an agent" must have "maintain[ed] a matrimonial domicile in [Florida] at the time of the commencement of this action, or, [have] resided in [Florida] preceding the commencement of this action." Fla. Stat. Ann. § 48.193 (2006). Additionally, the complaint must adequately allege a basis for long arm jurisdiction. Mouzon v. Mouzon, 458 *603 So.2d 381, 383 (Fla.Dist.Ct.App.1984). Failure to do so "voids any service of process . . . with the result that there . . . [is] no in personam jurisdiction over the respondent," Id. "[T]he judgment obtained is also void." Wrenn v. McDonnell, 671 So.2d 884, 885 (Fla.Dist.Ct.App.1996).
¶ 35. The record shows that the marital domicile was never in Florida. It was in Lincoln County, Mississippi. Also, the record does not show that Irma ever resided in Florida. In fact, the record shows she resided in Mississippi since at least the mid-1970s. The Florida long arm statute does not apply. Finally, we note that William's complaint for divorce failed to allege that the marital domicile or Irma's residence was in Florida. On these facts, under Florida law, Florida did not take in personam jurisdiction over Irma, by virtue of its long arm statute.
¶ 36. The question remains whether Irma generally appeared in the Florida action, sufficiently to waive personal jurisdiction. "[U]nless a nonresident [spouse] voluntarily appears and waives all jurisdictional objections, or facts establishing minimum contacts sufficient to support a basis for long arm jurisdiction over the nonresident [spouse] are shown to exist, service obtained pursuant to 48.194 does not provide in personam jurisdiction with respect to matters of child and spousal support." Brown v. Brown, 786 So.2d 611, 613 (Fla.Dist.Ct.App.2001). Not every appearance in an action constitutes a waiver of personal jurisdiction. The defendant must appear and seek "affirmative relief on causes of action unrelated to the transaction forming the basis of the plaintiff's claim." Fla. Stat. Ann. § 48-193(4) (2006). A motion to seek enforcement of an out-of-state order is not a motion for affirmative relief, which waives personal jurisdiction. Baggett v. Walsh, 510 So.2d 1099 (Fla.Dist. Ct.App.1987).
¶ 37. For example, in Baggett, the former husband was domiciled in Georgia, while the former wife was domiciled in Florida. Id. at 1100. The wife filed an action in Florida seeking to modify child support and visitation. Id. The husband filed a motion to enforce a prior Georgia order of visitation. Id. The Florida court held this motion did not waive personal jurisdiction over the child support issues. Id. at 1103. This was because the motion did not seek affirmative relief on unrelated causes of action. Id. Rather, the relief sought "was based on a claim clearly related to the transaction forming the basis of appellee's claim." Id.
¶ 38. The Florida court dealt a similar issue again in Fox v. Webb, 495 So.2d 879, 879 (Fla.Dist.Ct.App.1986). The former wife was domiciled in Florida, and the former husband was domiciled in Texas. Id. The wife filed a petition in Florida to amend the Texas visitation order, to require the husband to undergo psychological evaluation, and to increase child support. Id. at 879-80. The husband then filed a counter-petition asking that he be allowed to communicate with his children and to keep the wife from estranging him from the children. Id. at 879. The court held that Fox's counter-petition "related solely to the issues of custody and visitation, which were the thrust of the appellee's original position." Id. at 880. He therefore did not seek unrelated affirmative relief, which could waive personal jurisdiction for child support purposes. Id.
¶ 39. After Florida rendered the default judgment for divorce, Irma filed a pro se motion for rehearing with the Florida court. However, the motion was not for rehearing, but rather was for the Florida court to recognize and enforce the Mississippi support orders. The motion states, in its entirety, "I request the Florida Court to acknowledge and confirm the support *604 for one adjudicated in Mississippi. . . . The Mississippi Support Order is enforceable in Florida, as the Mississippi Court had jurisdiction of the parties and the subject matter." In other words, her sole appearance was to enforce the prior Mississippi judgment. Separate maintenance is related to the transaction forming the basis for William's complaint for divorce. William conceded that he sought a divorce in order to avoid or cease his separate maintenance obligation. Indeed, divorce is a basis for denying separate maintenance. Additionally, in his complaint, William asserts that no alimony was sought. To the contrary, the Mississippi separate maintenance orders show a basis for a possible award of alimony. If, under Florida law, a motion to enforce a visitation judgment does not waive personal jurisdiction for child support purposes, then Irma's motion to enforce the Mississippi orders did not waive personal jurisdiction for alimony purposes.
¶ 40. As noted previously, personal jurisdiction is required before a court may enter an alimony order. Because Florida did not obtain personal jurisdiction over Irma, we need not consider whether Florida ruled on alimony in its order of dissolution of marriage.

CONCLUSION
¶ 41. We affirm. We find that the Florida court did not obtain personal jurisdiction over Irma, and its judgment is not res judicata over her claim for alimony. The issue of alimony was therefore properly before the Lincoln County Chancery Court.
¶ 42. THE JUDGMENT OF THE CHANCERY COURT OF LINCOLN COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO APPELLANT.
KING, C.J., LEE, AND MYERS, P.JJ., SOUTHWICK, CHANDLER, BARNES, ISHEE AND ROBERTS, JJ., CONCUR. IRVING, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.