# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2012-CA-01966-SCT

*MARTIN L. PIERCE*

*v.*

**STAR L. PIERCE**

| | |
|---|---|
| DATE OF JUDGMENT: | 08/24/2012 |
| TRIAL JUDGE: | HON. CARTER O. BISE |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | PATRICIA PETERSON SMITH |
| ATTORNEY FOR APPELLEE: | WILLIAM E. TISDALE |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | AFFIRMED - 02/20/2014 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

### BEFORE DICKINSON, P.J., LAMAR AND CHANDLER, JJ.

### CHANDLER, JUSTICE, FOR THE COURT:

¶1.     Martin and Star Pierce were married in Mississippi on October 8, 2000, and divorced by order of a Washington state court on July 24, 2007. Because the Washington court lacked personal jurisdiction over Star, it did not divide the parties' assets. Subsequently, Martin brought an action in the Second Judicial District of the Chancery Court of Harrison County requesting sale of the parties' Biloxi home and determination of the parties' financial obligations incurred during the marriage. Star filed a counterclaim requesting equitable distribution of the marital assets, alimony, and attorney's fees. The chancellor equitably divided the parties' assets and awarded Star alimony and attorney's fees. Martin appealed the

chancellor's judgment, and the Court of Appeals reversed the property division and remanded for further proceedings.

¶2.    On remand, Martin raised two jurisdictional challenges for the first time. First, he argued that the Washington judgment was *res judicata* as to Star's claims for equitable distribution and alimony; therefore, the chancery court lacked subject-matter jurisdiction to divide the parties' assets. Second, he argued that, because he never consented to the chancery court's jurisdiction, the chancery court lacked personal jurisdiction to divide his military retirement benefits under the Federal Uniformed Services Former Spouse Protection Act (FUSFSPA). *See* 10 U.S.C.A. § 1408 (c) (2006). The chancery court found that it had subject-matter jurisdiction to divide the parties' assets and personal jurisdiction over Martin under the FUSFSPA. The chancery court ordered the sale of the marital home, with the equity to be divided equally between the parties, and awarded Star a pro rata share of Martin's military retirement accumulated during the marriage, half of Martin's thrift savings plan accumulated during the marriage, rehabilitative alimony, and attorney's fees. Martin renews his jurisdictional arguments on appeal and challenges the property division and award of rehabilitative alimony. He argues he was entitled to attorney's fees and that the chancellor should have denied Star's request for attorney's fees as a sanction.

¶3.    We find that, because the Washington court lacked personal jurisdiction over Star and had no authority to divide the parties' assets, its judgment had no *res judicata* effect on property division, and the chancery court had subject-matter jurisdiction to equitably divide the parties' property. We also find that Martin consented to the personal jurisdiction of the chancery court under the FUSFSPA by making a general appearance and trying the issue of

2

property division through appeal without ever challenging personal jurisdiction. We further find that the chancellor did not abuse his discretion in equitably dividing the parties' assets and in awarding Star rehabilitative alimony. We find that Martin was not entitled to attorney's fees and his sanctions argument is procedurally barred. Therefore, we affirm.

**FACTS**

¶4. When Martin and Star were married, Martin was enlisted in the United States Navy. During the marriage, the Navy stationed Martin at several locations around the country, and he attended several training schools. Martin testified that dependents were discouraged from living at some of these locations. With the exception of Fallon, Nevada, Star did not live with Martin at any of these locations. Star testified that she suffered from numerous medical conditions including Crohn's disease, kidney disease, endometriosis, and arthritis. She testified that she had Crohn's disease and kidney disease before the parties were married, and that Martin had been aware of these conditions. Star never worked or attended school during the marriage, but she kept the house clean and paid the bills. No children were born of the marriage, but Star had custody of Kayla, her daughter from a previous relationship.

¶5. Beginning in 2001, Martin was stationed in Fallon, Nevada, for three years, where he lived with Star and Kayla. After two years, Star decided to move back to Mississippi with Kayla. She testified that she moved because she needed a hysterectomy and needed to be closer to medical providers. Martin testified that Star returned to Mississippi because she was homesick and missed her family. The parties never lived together again after Star's move to Mississippi. After Star's hysterectomy, they bought a home in Biloxi. Star and Kayla lived in the home, and Martin, now stationed in Jacksonville, Florida, visited on weekends.

3

Although the home was titled in the names of Martin and Star, Martin paid the mortgage and all other household expenses.

¶6. In 2005, Martin was transferred to Whidbey Island, Washington. Shortly thereafter, he was deployed to Japan for six months and then returned to Whidbey Island. In May 2006, Martin called Star and said he wanted a divorce. The parties agree that May 2006 was the date of separation. After the separation, Martin continued sending Star money for household expenses. Once Martin had established residency in Washington, he filed for divorce. Martin served Star with process, but she did not appear in the Washington proceeding. On July 24, 2007, the Washington court granted the divorce. The court declined to consider property division, stating "[s]ince the court does not have personal jurisdiction over [Star], the court cannot make any award of property or debts."

¶7. On January 11, 2008, Martin filed a "Complaint to Adjudicate Real and Personal Property Rights and for Eviction of the Defendant" in the Second Judicial District of the Chancery Court of Harrison County. Martin asserted that he and Star had been divorced by order of a Washington court and attached a copy of the Washington divorce decree. Martin requested right, title, and possession of the marital home, that he be permitted to enter the home and recover his personal property, that the court determine the parties' marital debt obligations, and that the court order Star to pay for any damage to the home. Star filed an answer and counterclaim for equitable distribution. She requested, inter alia, an equitable share of the marital assets, possession and title of the marital home, periodic and lump-sum alimony, an order for Martin to pay all marital debts, a pro rata share of Martin's military retirement, to be named as the beneficiary of his Survivor's Benefits Annuity, and reasonable

4

attorney's fees.

¶8.     A hearing occurred on September 25, 2008. Martin testified that he had remarried on November 15, 2007. Although he met his current wife when deployed to Japan, he testified that they did not engage in sexual relations until after his separation from Star in May 2006. Star testified that she worked as a substitute teacher and a cashier at McDonald's. Star maintained that her illnesses prevented her from working full-time and that she was applying for disability. On December 23, 2008, the chancellor awarded Star possession of the marital home until she remarried or Kayla graduated from high school, sixty-five percent of Martin's military retirement that accrued during the marriage, half of Martin's thrift savings plan that accrued during the marriage, Martin's military Survivor's Benefits Annuity, $500 in permanent periodic alimony, $700 in periodic alimony to pay the mortgage, taxes, and insurance on the home, and Star's attorney's fees.

¶9.     Martin appealed. He argued that the chancellor's equitable distribution excessively rewarded Star and constituted an abuse of discretion, that the chancellor had abused his discretion by awarding Star periodic alimony, and that the chancellor erroneously had awarded Star the marital home contingent on a child-related event. The Court of Appeals found that the chancellor did not manifestly err "in considering the parties' earning capacities and future needs" and that the award of attorney's fees was reasonable. *Pierce v. Pierce*, 42 So. 3d 658, 664 (Miss. Ct. App. 2010). Nonetheless, the Court of Appeals found that the property division had to be reversed because the chancellor had failed to make any fact-findings on Star's contributions before awarding Star both the Survivor's Benefits Annuity and sixty-five percent of Martin's military retirement account. The Court of Appeals held

5

that the lack of fact-finding supporting the Survivor's Benefits Annuity award and the military retirement award mandated reversal. And because "property division and alimony awards should be considered together," the court reversed those awards. The court also found that the chancellor erroneously had conditioned the alimony award on an event in the life of Star's daughter, which amounted to an order for Martin to pay child support for a step-child. The court stated that, due to the reversal of the property division and alimony awards, the chancellor also could revisit the award of attorney's fees on remand.

¶10. A second hearing occurred before the chancellor on May 7-8, 2012. Star testified that she continued to suffer from illnesses which hade prevented her from working full-time. She testified that her doctors had advised that her conditions would get worse and that she should seek disability. She testified that she had quit working entirely to qualify for disability, and that her sources of income included food stamps and money from her mother and churches. Star did not produce any medical testimony supporting her claim that she could not work and had been advised to seek disability. She testified that her disability application had been denied, and that she was awaiting a decision on appeal. Martin testified that, since the chancery court's original judgment, he had paid more than $78,000 in alimony and mortgage payments. He admitted that he had ceased paying Star alimony or consistently making the mortgage payments since the Court of Appeals' August 24, 2010, judgment reversing the alimony award.

¶11. The chancellor concluded that Star refused to work and that Martin was the sole party with earning capacity. The chancellor ordered that the marital home be sold, with the net proceeds to be divided equally. The chancellor also awarded Star half of the funds in the

6

thrift savings plan accrued during the marriage and half of Martin's military retirement benefits accrued during the marriage. The chancellor awarded Star $500 per month in rehabilitative alimony for sixty months and reasonable attorney's fees.

## STANDARD OF REVIEW

¶12.    This Court will not disturb the decision of a chancellor that is supported by substantial evidence unless the chancellor's decision was manifestly wrong, clearly erroneous, or an incorrect legal standard was applied. *Rogillio v. Rogillio*, 101 So. 3d 150, 153 (Miss. 2012). We apply de novo review to issues of personal and subject-matter jurisdiction. *Baker & McKenzie, LLP v. Evans*, 123 So. 3d 387, 404 (Miss. 2013); *Alford v. Miss. Div. of Medicaid*, 30 So. 3d 1212, 1217 (Miss. 2010).

## LAW AND ANALYSIS

I.    WHETHER THE CHANCERY COURT HAD SUBJECT-MATTER JURISDICTION TO PERFORM EQUITABLE DISTRIBUTION AND AWARD ALIMONY.

¶13.    With his first and third issues, Martin seeks to use the Washington divorce decree as a shield against Star's counterclaims for equitable distribution and alimony. Martin contends that, because Star was personally served with process in the Washington divorce action but failed to participate in that action, the divorce decree was *res judicata* as to Star's claims for equitable distribution and alimony and the chancellor lacked subject-matter jurisdiction over the claims. Martin contends that a Mississippi court cannot determine property division or alimony outside of a divorce proceeding unless the Mississippi court granted the divorce and retained jurisdiction.

¶14.    This case presents the question of whether a foreign divorce decree will bar litigation

7

of property division and alimony in a separate action in this state. The doctrine of *res judicata* "bars all issues that might have been (or could have been) raised and decided in the initial suit, plus all issues that were actually decided in the first cause of action." ***Little v. V&G Welding Supply, Inc.***, 704 So. 2d 1336, 1337 (Miss. 1997). Martin's argument is that the chancery court lacked subject-matter jurisdiction over matters that should have been raised in the Washington action. We note that the issue of subject-matter jurisdiction may be raised at any time in the proceedings, including on appeal. ***Burnette v. Hartford Underwriters Ins. Co.***, 770 So. 2d 948, 951 (Miss. 2000); M.R.C.P. 12(h)(3).

¶15.     Two cases with facts strikingly similar to the instant case dictate the conclusion that the Washington divorce decree did not bar the chancery court's adjudication of property division and alimony. In ***Weiss v. Weiss***, 579 So. 2d 539, 540 (Miss. 1991), the husband, a Louisiana resident, filed for divorce in Louisiana, and the wife, a Mississippi resident, filed a claim for separate maintenance in Mississippi. The Louisiana court granted the divorce. *Id.* Subsequently, the Mississippi court awarded periodic alimony payments. *Id.* The husband challenged the alimony award, arguing that the Louisiana divorce decree barred litigation of alimony in Mississippi. *Id.* This Court held that, regardless of whether a divorce decree is entered in a Mississippi court or a foreign court, litigation of divorce and alimony are divisible. *Id.* The Court stated that, "Mississippi law is clear that where 'the case in the foreign court is not decided on its merits, while suit might be barred from any other court in the state where the judgment was rendered it is not res judicata' in Mississippi." *Id.* at 541 (quoting ***Lee v. Swain Bldg. Materials Co.***, 529 So. 2d 188, 190 (Miss. 1988)). Because the issue of alimony had been dismissed by the Louisiana court and had not been litigated, this

8

Court held that the Louisiana divorce decree was not *res judicata* as to the alimony claim and the Mississippi court had jurisdiction to award alimony. *Id.*

¶16.    The Court of Appeals addressed this issue in further detail in *Lofton v. Lofton*, 924 So. 2d 596 (Miss. Ct. App. 2006). The wife, a Mississippi resident, filed a complaint for divorce and separate maintenance in Mississippi, and the chancery court ordered separate maintenance. *Id.* at 598. Then, the husband, a Florida resident, filed for divorce in Florida. *Id.* The wife was served with process but did not appear in the Florida action. *Id.* The Florida court granted the divorce but did not adjudicate property division or alimony. *Id.* The husband then filed a petition in the Mississippi court to dismiss his obligation to pay separate maintenance. *Id.* In light of the fact the parties were now divorced, the chancery court modified the separate-maintenance payment to alimony. *Id.* at 599.

¶17.    The husband appealed, arguing that, because the wife had not pursued her alimony claim in the Florida action, the Florida divorce decree operated as *res judicata* to the claim. *Id.* The Court of Appeals cited *Estin v. Estin*, 334 U.S. 541, 549, 68 S. Ct. 1213, 1218, 92 L. Ed. 1561 (1948), which held that, under the Full Faith and Credit Clause, a husband's Nevada divorce action was divisible from a New York alimony order because the Nevada court had lacked personal jurisdiction over the wife and could not have addressed the issue of alimony. *Id.* at 601 (citing *Estin*, 334 U.S. at 547, 68 S. Ct. at 1213). The Court of Appeals also cited *Weiss* for the proposition that a foreign decree will not operate as *res judicata* in Mississippi if the case was not decided on the merits. *Lofton*, 924 So. 2d at 602 (citing *Weiss*, 579 So. 2d at 541). From this precedent, the Court of Appeals found that the Florida decree would bar the alimony claim if the Florida court had personal jurisdiction over the

9

wife and had adjudicated the alimony claim. ***Lofton***, 924 So. 2d at 602.

¶18.    The Court of Appeals held that, under Florida law, the Florida court had lacked personal jurisdiction over the wife because she had not generally appeared in the action. ***Id.*** at 603. Therefore, while the husband's residence in Florida had enabled the Florida court to grant a divorce, the court's lack of personal jurisdiction over the wife prevented its adjudication of personal rights, such as property division and alimony. ***Id.*** at 601-04. Because the Florida court had lacked personal jurisdiction over the wife, its judgment was not *res judicata* as to her alimony claim. ***Id.*** at 604.

¶19.    Turning to the instant case, the parties do not dispute that the Washington court had subject-matter jurisdiction to grant Martin a divorce. *See **Williams v. North Carolina***, 317 U.S. 287, 298-99, 63 S. Ct. 207, 213, 87 L. Ed. 279 (1942) (holding that a state has subject matter jurisdiction to grant a divorce if one of the spouses is domiciled in the state). But the Washington court held that it lacked personal jurisdiction over Star and, therefore, it could not "make any award of property or debts." Indeed, a court granting a divorce cannot perform property division if it lacks personal jurisdiction over one of the parties. ***Estin***, 334 U.S. at 549, 68 S. Ct. at 1218. Because the Washington court lacked personal jurisdiction over Star and had no authority to divide the parties' assets, the Washington divorce decree was not *res judicata* as to Star's counterclaim for equitable distribution and alimony. The chancery court had subject-matter jurisdiction over these claims.

      II.     WHETHER THE CHANCERY COURT HAD PERSONAL JURISDICTION TO DIVIDE MARTIN'S MILITARY RETIREMENT BENEFITS UNDER THE FUSFSPA.

¶20.    The chancery court awarded Star half of the military retirement benefits which Martin

10

had accumulated during the marriage. Martin argues that, under the FUSFSPA, the chancery court lacked jurisdiction to divide his military benefits. The FUSFSPA was enacted in 1982 to give states the authority to determine the rights of a former spouse in a retired service person's military pension. *Petters v. Petters*, 560 So. 2d 722, 725 (Miss. 1990). To limit forum-shopping and to prevent service persons from having to defend their retirement pensions in foreign forums, the FUSFSPA includes specific requirements for obtaining personal jurisdiction over a service person. *Petters*, 560 So. 2d at 726; 10 U.S.C.A. § 1408(c)(4) (2006). In *Petters*, this Court recognized that, under the Supremacy Clause of the United States Constitution, the FUSFSPA's jurisdictional provisions override this state's long-arm statutes "to the extent that the state's law would exceed the limitations of the federal enactment." *Petters*, 560 So. 2d at 725.

¶21.   Section 1408(c)(4) of the FUSFSPA imposes the following jurisdictional limitations:

> A court may not treat the disposable retired pay of a member in the manner described in paragraph (1) unless the court has jurisdiction over the member by reason of (A) his residence, other than because of military assignment, in the territorial jurisdiction of the court, (B) his domicile in the territorial jurisdiction of the court, or (C) his consent to the jurisdiction of the court.

10 U.S.C.A. § 1408(c)(4) (2006). It is undisputed that Martin neither resides, nor is domiciled, in Mississippi and that the sole route to personal jurisdiction over Martin is a finding that he consented to jurisdiction under subsection (C). The chancery court found that Martin had consented to jurisdiction by filing his complaint.

¶22.   This Court has not squarely addressed the issue of what acts constitute consent to personal jurisdiction under Section 1408(c)(4). Other states have held that consent by a military spouse may be express or implied, and that a general appearance coupled with a

11

failure to timely object to personal jurisdiction constitute implied consent under Section 1408(c)(4)(C). *Judkins v. Judkins*, 441 S.E. 2d 139, 140 (N.C. Ct. App. 1994); *Kildea v. Kildea*, 420 N.W. 2d 391, 394 (Wis. Ct. App. 1988); *Southern v. Glenn*, 677 S.W. 2d 576, 583 (Tex. Ct. App. 1984). In *Petters*, we stated that "the protections of Section 1408(c)(4), like other limitations on a state's authority to acquire personal jurisdiction, may be waived." *Petters*, 560 So. 2d at 726. Although waiver was not at issue in *Petters*, we indicated that a waiver could be accomplished through a general appearance or "anything else which might be construed as a present waiver." *Id.* We recognized that "[o]ther states have recognized this waiver doctrine in cases where the defendant entered a general appearance or waived the service of process upon him." *Id.*

¶23.    Characterizing his complaint as one for partition, Martin argues that his invocation of the jurisdiction of the chancery court was limited to his claim for sale of the house and he did not consent to personal jurisdiction for Star's counterclaim for equitable distribution of his military benefits. Martin is incorrect. It is well-established "that by filing suit a plaintiff automatically waives any objections he might otherwise have on grounds of personal jurisdiction to counterclaims presented against him in the suit." *Sweetheart Plastics, Inc. v. Illinois Tool Works, Inc.*, 286 F. Supp. 62 (D. Ill. 1968) (citing *Leman v. Krentler-Arnold Hinge Last Co.*, 284 U.S. 448, 451, 52 S. Ct. 238, 239, 76 L. Ed. 389 (1932)). By filing suit requesting sale of the marital home and division of marital debts in Mississippi, Martin voluntarily subjected himself to Star's compulsory counterclaim for equitable distribution. M.R.C.P. 13(a). Moreover, with his complaint, Martin made a general appearance. "A general appearance is one whereby [a party] submits his person to the jurisdiction of the court

by invoking the judgment of the court in any manner on any question other than that of the jurisdiction of the court over his person." *Judkins*, 441 S.E. 2d at 140 (quoting *In re Blalock*, 64 S.E. 2d 848, 856 (N.C. 1951)). Finally, Martin waived any personal-jurisdiction argument by failing to make a timely objection. He did not raise the argument until after the case had been tried, appealed, and remanded. In Martin's first appeal, he never challenged the chancery court's jurisdiction to divide his military benefits; rather, he characterized his complaint as one for equitable distribution and argued that the amount of the award of retirement benefits was inequitable. He requested that the case be remanded for "an appropriate and equitable analysis of all issues relating to property division, alimony, and attorney's fees." It was only on remand, with new counsel, that Martin first raised the issue of personal jurisdiction. The record plainly reflects that Martin's actions constituted consent to personal jurisdiction under Section 1408(c)(4).

III. WHETHER THE CHANCELLOR ERRONEOUSLY AWARDED STAR HALF THE EQUITY IN THE MARITAL HOME AND ALIMONY.

¶24. Martin argues that the chancellor erred by ordering the parties to split the equity in the marital home after its sale and in awarding Star alimony.

*A. Equitable distribution*

¶25. Pursuant to *Ferguson v. Ferguson*, the chancellor must equitably divide the marital property using the following guidelines, if applicable:

1. Substantial contribution to the accumulation of the property. Factors to be considered in determining contribution are as follows:

a. Direct or indirect economic contribution to the acquisition of the property;

13

b. Contribution to the stability and harmony of the marital and family relationships as measured by quality, quantity of time spent on family duties and duration of the marriage; and

c. Contribution to the education, training or other accomplishment bearing on the earning power of the spouse accumulating the assets.

2. The degree to which each spouse has expended, withdrawn or otherwise disposed of marital assets and any prior distribution of such assets by agreement, decree or otherwise.

3. The market value and the emotional value of the assets subject to distribution.

4. The value of assets not ordinarily, absent equitable factors to the contrary, subject to such distribution, such as property brought to the marriage by the parties and property acquired by inheritance or inter vivos gift by or to an individual spouse;

5. Tax and other economic consequences, and contractual or legal consequences to third parties, of the proposed distribution;

6. The extent to which property division may, with equity to both parties, be utilized to eliminate periodic payments and other potential sources of future friction between the parties;

7. The needs of the parties for financial security with due regard to the combination of assets, income and earning capacity; and,

8. Any other factor which in equity should be considered.

*Ferguson v. Ferguson*, 639 So. 2d 921, 928 (Miss. 1994). If the equitable distribution, considered along with each party's nonmarital assets, leaves one party with a deficit, then the court should consider alimony. *Johnson v. Johnson*, 650 So. 2d 1281, 1287 (Miss. 1994). "Alimony and equitable distribution are distinct concepts, but together they command the entire field of financial settlement of divorce. Therefore, where one expands, the other must recede." *Ferguson*, 639 So. 2d at 929.

14

¶26.     The chancellor made findings on each *Ferguson* factor before dividing the marital

assets. Under the first factor, the chancellor found that Star had not worked outside the

marital home or pursued an education and had not contributed financially to the accumulation

of marital assets. However, the chancellor applied the presumption that a nonworking spouse

contributes equally to the accumulation of marital assets. *See Hemsley v. Hemsley*, 639 So.

2d 909, 915 (Miss. 1994). The chancellor found that neither party had contributed to the

stability of the marriage, finding that Star had left Martin to return to Mississippi, and Martin

had not encouraged Star to accompany him to those duty stations that welcomed dependants.

The chancellor found that Star had wasted marital assets by taking $9,000 from a joint

account upon learning of the pending divorce, and that Martin had paid $78,000 in alimony

and house payments since the court's original judgment. The chancellor found Star had an

emotional attachment to the marital home, but that she could not make the mortgage

payments. Regarding the extent to which property division could eliminate periodic

payments and friction, the chancellor found that Star refused to work. Regarding the parties'

respective need for financial security, the chancellor recognized that Martin was the sole

party with earning capacity, while Star was "waiting on the system to take care of her." But

the chancellor also recognized that Star suffered from a number of ailments and that, since

the divorce, she no longer had military medical benefits, though she qualified for Medicaid.

The chancellor found that there was no testimony as to the value of assets not ordinarily

subject to distribution or tax consequences or consequences to third parties, or on other

factors.

¶27.     After making these detailed findings, the chancellor awarded Star half the equity in

15

the home upon its sale, estimated at $8,000 to $9,000. The chancellor awarded Star half of Martin's military retirement benefits accumulated during the marriage, noting that the value could not be calculated, and that Martin's receipt of retirement benefits is conditional upon his completing twenty years of service, which may not occur. The chancellor also awarded Star $7,000, which was half the funds in Martin's thrift savings plan accumulated during the marriage.

¶28.    "In reviewing a chancellor's judgment, this Court does not conduct a *Ferguson* analysis anew, but reviews the judgment to ensure that the chancellor followed the appropriate standards and did not abuse his discretion." *Phillips v. Phillips*, 904 So. 2d 999, 1001 (Miss. 2004). Martin argues that, because he paid the mortgage on the marital home, the chancellor's order for the parties to split the equity in the marital home was inequitable. The chancellor valued the equity in the marital home at $8,000 to $9,000, meaning that Star's award would be $4,000 to $4,500. Star also received $7,000, constituting half of Martin's thrift savings plan accumulated during the marriage. Star also received half of Martin's military retirement benefits, which the chancellor was unable to value. The chancellor also awarded Star $500 in rehabilitative alimony for sixty months. These amounts were considerably less than the chancellor had awarded in the original property division, in which he had ordered Martin to pay the mortgage on the marital home, enabling Star to live there, and awarded her sixty-five percent of Martin's military retirement benefits, his Survivor's Benefits Annuity, half the thrift savings plan, and $500 in permanent periodic alimony. On remand, the chancellor took both Star's ailments and her refusal to work into consideration in reducing the amounts she received and in awarding rehabilitative alimony rather than

16

permanent alimony. The chancellor made detailed findings on the ***Ferguson*** factors. We find that the chancellor followed the appropriate standards and that the equitable distribution was not an abuse of discretion.

*B. Alimony*

¶29.    Martin also argues that, because Star's testimony about her ailments was not credible, the chancellor abused his discretion in awarding her rehabilitative alimony. Rehabilitative alimony "is an equitable mechanism which allows a party needing assistance to become self-supporting without becoming destitute in the interim." ***Hubbard v. Hubbard***, 656 So. 2d 124, 130 (Miss. 1995). It "is not intended as an equalizer between the parties but is for the purpose of allowing the less able party to start anew without being destitute in the interim." ***Id.*** The chancellor also awarded Star $500 per month in rehabilitative alimony after considering the ***Armstrong*** factors.

¶30.    Under ***Armstrong v. Armstrong***, the chancellor must consider the following factors in determining whether alimony should be awarded:

1. The income and expenses of the parties;

2. The health and earning capacities of the parties;

3. The needs of each party;

4. The obligations and assets of each party;

5. The length of the marriage;

6. The presence or absence of minor children in the home, which may require that one or both of the parties either pay, or personally provide, child care;

7. The age of the parties;

17

8. The standard of living of the parties, both during the marriage and at the time of the support determination;

9. The tax consequences of the spousal support order;

10. Fault or misconduct;

11. Wasteful dissipation of assets by either party; or

12. Any other factor deemed by the court to be "just and equitable" in connection with the setting of spousal support.

***Armstrong v. Armstrong***, 618 So. 2d 1278, 1280 (Miss. 1993).

¶31. Applying the ***Armstrong*** factors, the chancellor found Martin's monthly net income to be $5,914, and Star's to be $367 in food stamps, plus sporadic donations from her mother and churches. The chancellor found that Star's mother paid her car note. The chancellor found Martin's monthly expenses to be $6,150,86, including the mortgage payment on the marital home, which was to be sold. Star's expenses were $1,170 per month, not including the mortgage payment on the marital home. The chancellor found that, because Star possessed only a high-school education, she had limited earning capacity. However, the chancellor found that Star had failed to demonstrate she could not work, and that she had chosen not to work to pursue disability. The chancellor recognized Martin's financial obligations toward his home in California. The chancellor found the parties' assets consisted of the home equity of $8,000 and the thrift savings plan of $14,000, and that Star had removed $9,000 from the joint bank account. The chancellor found Star had a minor daughter for whom she received no child support, and that Star's standard of living had substantially declined, while Martin's had increased. The chancellor held neither party to be at fault in the divorce, and again noted that Martin had paid $78,000 in alimony and mortgage payments

18

since the original judgment. After making these findings, the chancellor awarded Star $500 per month in rehabilitative alimony for sixty months, with Star to notify the court if she qualified for disability.

¶32. Martin argues that the chancellor abused his discretion in awarding rehabilitative alimony, because Star's testimony about her ailments was not credible. He points to a 2011 colonoscopy record that was admitted into evidence showing no evidence of Crohn's disease. On cross-examination, Star admitted that her doctors had said her Crohn's disease was in remission, but that she still takes medication for it. Martin argues that Star's pharmacy records show no prescriptions for that medication. However, Star testified that she received samples of the medication from her physicians because its cost was not covered by Medicaid. Martin argues that this testimony was not credible because, when confronted with Medicaid information showing the medication was covered, Star had no explanation. Martin also disputes Star's testimony that she had endometriosis, arguing that no endometriosis should have been present after Star's hysterectomy.

¶33. In his order, the chancellor recognized that Star admitted her 2011 colonoscopy had shown no evidence of Crohn's. The chancellor further recognized that Star had not proven she was unable to work. The chancellor found that Star had chosen not to work to pursue disability. Star had a high-school education and had not worked during the seven-year marriage. After the divorce, Star had performed part-time, unskilled, minimum-wage jobs. Star testified that, if the marital home was sold, she would have to move in with her mother. Both parties testified about Star's ailments and treatment for those ailments during the marriage. Obviously, the chancellor balanced the evidence that Star suffered from ailments

19

of which Martin had been aware before the marriage with the fact that Star had failed to prove she was unable to work in deciding not to adopt the original periodic alimony award, but instead awarding rehabilitative alimony. We find that the rehabilitative alimony award was not an abuse of discretion.

IV. WHETHER MARTIN IS ENTITLED TO ATTORNEY'S FEES AND COSTS AND WHETHER THE CHANCELLOR SHOULD HAVE SANCTIONED STAR BY DENYING HER REQUEST FOR ATTORNEY'S FEES.

¶34. The chancellor found that Star was unable to pay her attorney's fees. After considering the appropriate factors under *McKee v. McKee*, 418 So. 2d 764 (Miss. 1982), the chancellor awarded Star $4,000 as her reasonable attorney's fees. Martin makes various arguments concerning attorney's fees that may be distilled into three complaints: (1) that because the chancery court lacked subject-matter jurisdiction over Star's claim for equitable distribution, *McKee* did not apply; (2) that because this is, in reality, a lawsuit for partition and the chancellor ordered the property sold, Martin is entitled to attorney's fees for a successful partition action under Mississippi Code Section 11-21-31 (Rev. 2004)[1]; and (3) the chancellor should have sanctioned Star under the Litigation Accountability Act because she misrepresented her financial status to the court at the original hearing. *See* Miss. Code Ann. § 11-55-5 (Rev. 2012).

¶35. This Court already has determined that the chancery court had subject-matter

---

[1] According to Mississippi Code Section 11-21-31, "[i]n all cases of the partition or sale of property for division of proceeds, the court may allow a reasonable attorney's fee to the attorney or the plaintiff, to be taxed as a common charge on all the interests, and to be paid out of the proceeds in case of a sale, and to be a lien on the several parts in case of partition." Miss. Code Ann. § 11-21-31 (Rev. 2004).

jurisdiction to perform an equitable distribution. The chancellor's order for the house to be sold was part of the equitable distribution. Therefore, the partition statutes have no applicability to this case, and Martin was not entitled to attorney's fees under Section 11-21-31. We note that, while Martin requested attorney's fees in his complaint, Martin's complaint does not mention partition, cite any partition statute, or request attorney's fees pursuant to a partition. Rather, his complaint requested sale of the marital home and a determination of the parties' joint debt obligations from the marriage. Although Martin deems this a partition action in his briefs before this Court, in his first appeal, Martin characterized his complaint as one for equitable distribution.

¶36. Martin argues that the chancellor should have sanctioned Star under the Litigation Accountability Act because she misrepresented her financial status to the court. Specifically, Martin argues that the second hearing was when Star first admitted that she had removed $9,000 from the parties' joint savings account after Martin had told her he wanted a divorce. Martin contends that, at the first hearing, Star withheld the fact that she had $9,000 with which to pay her attorney. He argues that, when this information was revealed at the second hearing, the chancellor should have sanctioned Star by denying her request for attorney's fees.

¶37. Martin's argument is procedurally barred, because he never raised it before the chancery court. "Issues raised for the first time on appeal are procedurally barred." *McNeese v. McNeese*, 119 So. 3d 264, 267 (Miss. 2013). And notwithstanding the procedural bar, the argument is without merit. Star did testify about taking the $9,000 at the original hearing. She testified that she used a portion of the funds to pay her attorney and used the rest for living

21

expenses. Therefore, Star did not withhold the information from the chancellor, and the information was before the chancellor when he made the original attorney's fees award as well as the attorney's fees award on remand.

**CONCLUSION**

¶38. The chancery court had subject-matter jurisdiction to perform an equitable distribution and award alimony. Because Martin consented to jurisdiction, the chancery court had personal jurisdiction over Martin under the FUSFSPA to equitably divide his military retirement benefits. The chancery court's equitable distribution and award of rehabilitative alimony did not constitute an abuse of discretion. Finally, Martin was not entitled to attorney's fees under the partition statute, and his sanctions issue is procedurally barred. Therefore, we affirm.

¶39. **AFFIRMED.**

**WALLER, C.J., DICKINSON AND RANDOLPH, P.JJ., LAMAR, KITCHENS, PIERCE, KING AND COLEMAN, JJ., CONCUR.**