FAIR, J.,
for the Court:
¶ 1. William Lane sought termination of a Mississippi separate-maintenance order after he divorced his wife, Stella, in Texas. The Rankin County Chancery Court granted full faith and credit to the Texas divorce decree (which had itself accorded full faith and credit to the Mississippi separate-maintenance judgment) and enforced the terms of its prior separate-maintenance judgment. Finding no error, we affirm.
FACTS
¶ 2. William and. Stella married in 1982 and had one child together. They separated in 2005. On October 18, 2006, the chancery court, after a trial, entered a judgment for separate maintenance requiring William to pay Stella 55% of the net proceeds upon sale of the marital residence, 75% of Stella’s and the child’s out-of-pocket medical and dental expenses, a portion of Stella’s and their child’s car notes and insurance, and $500 per month for Stella’s living expenses. That .judgment was not appealed.
¶,3. William moved to Texas, and at his instance the parties were divorced in Texas on August 28,2013. The divorce decree included the following language: “The Court finds that the parties entered into a Judgment for Separate Maintenance attached as Exhibit-A to this Decree. It is not the intent or purpose of this decree,' nor shall it be construed or interpreted to alter, change, limit, diminish, or cancel any provisions of said judgment.” On November 12, 2013, William filed a complaint requesting that the chancery court dismiss his separate-maintenance obligations based on the parties’ Texas divorce judgment. Stella counterclaimed for contempt and enforcement of the separate-maintenance order.'
¶ 4. The chancery court ruled in favor of Stella, entering a judgment granting full faith and credit to the Texas divorce decree and enforcing the judgment of separate maintenance. William-appeals.
STANDARD OF REVIEW
¶ 5. “This Court will not disturb a chancellor’s judgment when supported by substantial evidence unless the chancellor abused his discretion, was manifestly wrong, [or was] clearly erroneous, or an erroneous legal standard was applied.” Chapel v. Chapel, 876 So.2d 290, 292 (¶ 8) (Miss.2004) (citation omitted).
DISCUSSION
,¶ 6. The only issue on appeal is whether William can use a foreign divorce decree to terminate (not modify)[1] a Mis *804 sissippi separate-maintenance judgment after signing an agreement to the contrary. We find that he cannot for two reasons: (1) Stella’s separate maintenance and matters of marital property and marital debt remain within the jurisdiction of the chancery court; and (2) the solemn agreement of the parties in the Texas proceedings, as recognized and adopted by the Texas trial court in a decree signed by both parties as to form and substance, is contractual in nature, and enforceable for that reason as well. Provisions set out in the separate-maintenance judgment remain subject to judicial enforcement by the chancery court through its grant of full faith and credit to the Texas judgment and through both courts’ recognition of jurisdiction over different aspects of the parties’ relationship as citizens of different states.
1. Jurisdiction of the Mississippi Court
¶ 7. William argues that the chancellor erred when he declined to terminate the separate-maintenance obligation as a matter of law based on the entry of the Texas divorce decree. “Article IV, § 1 of the United States Constitution requires that full faith and credit be given to the judicial proceedings of sister states.” Lofton v. Lofton, 924 So.2d 596, 599 (¶ 15) (Miss.Ct.App.2006) (quoting Kolikas v. Kolikas, 821 So.2d 874, 880 (¶ 34) (Miss.Ct.App.2002)). “However, those proceedings are only entitled to full faith and credit where the rendering court properly has subject matter and personal jurisdiction.” Id.
 ¶ 8. “[A] divorce action involving one resident party and one foreign party may or may not be able to adjudicate personal rights, though it can sever a marriage as long as at least one party is a resident of that state.” Id. at 601 (¶ 27). William personally, appeared before the Texas court. At the time the suit was filed, he had been a domiciliary of Texas for six months. Stella entered a general appearance through local counsel, ultimately signing the divorce decree along with William as to “form and substance.” The divorce decree specifically did not litigate the issues of support and property division. In' fact, the decree declined jurisdiction over all but the divorce itself, deferring to the chancery court and its separate-maintenance judgment for “all issues involving the division of the property and debt of the parties.”
¶ 9. In Weiss v. Weiss, 579 So.2d 589, 540-41 (Miss.1991), the Mississippi Supreme Court reaffirmed that Mississippi law allows for separate litigation of divorce and alimony. Thomas and Barbara Weiss married in Mississippi. Id. at 540. Thomas later moved to Louisiana and filed for divorce. Id. That same year, Barbara filed a request for separate maintenance in Mississippi. Id. The Louisiana court granted the divorce but reserved the issue of alimony for the Mississippi court.[2] Id. Our supreme court held that the Mississippi court had jurisdiction to determine alimony because the parties’ foreign divorce decree did not litigate the issue of alimony. Id. at 541.
¶ 10. The supreme court dealt with a similar issue in Chapel. In that case, the *805 Jackson County Chancery Court awarded Grace Chapel separate maintenance in 1996. Id. at 292 (¶ 5). Mr. Chapel was granted a divorce in Virginia in 1997. Chapel, 876 So.2d at 292 (¶ 6). The Mississippi chancellor modified the separate-maintenance agreement in 1998 and 2001. Id. at 294 (¶ 13). Grace argued that the chancellor lacked subject-matter jurisdiction because the Virginia divorce decree terminated the original separate-maintenance agreement. Id. at 293 (¶ 10). The supreme court held that “the .... chancery court continues to have jurisdiction in what originally was the separate-maintenance case, but which converted to one for alimony and other claims compatible with divorce actions[] after the date of the foreign divorce.” Id. at 295 (¶ 15).[3] In her treatise, Bell on Mississippi Family Law (2d Edition 2011), Professor Deborah Bell refers to this as a “recharacterization” of separate maintenance as alimony. '
¶ 11. Like the divorce decree in Weiss, the Texas divorce decree in the present case expressly reserved Stella’s rights to enforce the separate-maintenance order. And, similar to the wife in Chapel, Stella was awarded separate maintenance prior to the entry of a foreign divorce decree, and the foreign decree did not address the issue of separate maintenance. We do not find, like the dissent, that Stella’s failure to expressly petition for alimony prohibits the chancellor’s sua sponte “recharacterization” of separate maintenance as alimony. As stated in Weiss, “’[ajlimony’ and ‘maintenance’ are merely different words used in differing situations to describe the same thing.” 579 So.2d at 541 (citation and quotation omitted) (emphasis added). Mississippi law clearly provides that the chancery court retained jurisdiction over William and Stella’s separate-maintenance agreement, as acknowledged by the Texas court with the consent and agreement of the parties.
2. Contractual Nature of the Texas Divorce Decree
¶ 12. “[A] decree for separate maintenance may be modified upon a petition presented because of a material or substantial change of circumstances[, such as divorce,] arising subsequent to the date of the decree.” Landrum v. Landrum, 498 So.2d 1229, 1230 (Miss.1986) (citation omitted). William did not seek modification of the separate-maintenance order. Instead, he claimed that the divorce decree automatically terminated the order. However, the Texas divorce decree contained the following provision:

Agreement of the Parties

The [c]ourt finds that the parties have entered into a written agreement as contained in this decree by virtue of having approved this decree as to both form and substance. To the extent permitted by law, the parties stipulate the agreement is enforceable as a contract. The [c]ourt approves the agreement of the parties as contained in this [fjinal [djecree of [djivorce.
The [c]ourt finds that the parties entered into a[j]udgment for [separate [m]aintenance on or about September 1, 2006, in the Chancery Court of Rankin County, Mississippi, in case number 57913 ... It is not the intent or purpose of this decree, nor shall it be construed or interpreted to alter, change, limit, *806 diminish, or cancel any provision of said judgment. This [djecree is being entered separate and apart from that judgment.
¶ 13. In In re Kennington’s Estate, 206 So.2d 337, 338 (Miss.1968), our supreme court held that spouses can contract to payment terms deviating from the traditional concepts of spousal support (providing for alimony to continue after the former husband’s death and to be paid by his estate based on his former wife’s life expectancy). Ten years later, the supreme court went even further in Burnett v. Burnett, 362 So.2d 828, 830 (Miss.1978), finding that the former wife was entitled to status as an heir-at-law of the husband upon his death because of an offer in the divorce complaint and its implied acceptance by inclusion in the final decree of divorce.
¶ 14. Here, the chancellor ruled to enforce all terms of the separate-maintenance order, noting on the record, as had the Texas trial judge in his decree, the contractual aspects of his judgment. Thus, we also find that William’s written agreement, incorporated in the Texas judgment and specifically including the separate-maintenance order, constitutes a waiver of his right to contest the chancellor’s continued jurisdiction over issues regarding William’s support and maintenance obligations to Stella. ,
CONCLUSION
¶ 15. For the reasons set out above, we conclude that a separate-maintenance judgment of a Mississippi court that had acquired full jurisdiction over marital partners does not automatically become void upon entry of a valid divorce judgment in another state. We recognize, however, that entry of a divorce judgment under such circumstances is a material change in circumstances sufficient to allow consideration of modification of the separate-maintenance . judgment. Such modification must, however, take place upon proper pleading and be based on sufficient evidence to justify modification. In this case, as the chancellor properly noted, William sought no such modification, nor did he present any evidence to justify modification. He rested his case solely on the assertion that the judgment in issue became totally void and of no legal effect upon the Texas divorce judgment, overlooking the fact that the Texas court had specifically deferred to the chancery court’s continuing jurisdiction over issues of support and marital property. The chancery court therefore properly rejected William’s argument that it lacked jurisdiction.
¶ 16. THE JUDGMENT OF THE CHANCERY COURT OF RANKIN COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., GRIFFIS, P.J., BARNES, ISHEE, MAXWELL AND JAMES, JJ., CONCUR.' IRVING, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY CARLTON AND WILSON, JJ.

. A divorce can be a material change in circumstances warranting modification of a pri-pr separate-maintenance order. Landrum v. *804 Landrum, 498 So.2d 1229, 1230 (Miss.1986) (citation omitted).

. Barbara’s claim for separate maintenance was no longer proper since a divorce had been granted but was convertible to a claim for alimony. Weiss, 579 So.2d at 541. Separate maintenance and alimony may both result in payments for a short period of time or an extended period of time (the period of time for separate maintenance is more uncertain). Id. at 542.

. The supreme court also stated that because "neither party ... made formal objections to the chancellor’s authority to modify the original separate-maintenance judgment after the Virginia divorce was granted, it is not neces-saiy for the Court to reach the issue of whether ... a foreign divorce decreet ] terminates a domestic court’s order of separate maintenance." Chapel, 876 So.2d at 294 (¶ 11).